UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS** | Misc. Action No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF
LOS ANGELES TIMES COMMUNICATIONS LLC
<u>TO UNSEAL COURT RECORDS</u>**

Katie Townsend
ktownsend@rcfp.org
D.C. Bar No. 1026115
Jennifer A. Nelson
jnelson@rcfp.org
D.C. Bar No. 1011387
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Counsel for Applicant Los Angeles Times Communications LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

ARGUMENT ............................................................................................................................ 5

    I.   Applicant has both a First Amendment and a common law right to inspect the Search Warrant Materials. ..................................................................................... 5

    II.  No countervailing interest overcomes Applicant's common law and First Amendment rights to inspect the Search Warrant Materials. ........................ 7

CONCLUSION ...................................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**Cases**

*In re Application of Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ................................. 7

*In re Application of N.Y. Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) . 5, 6, 7, 8, 9

*In re Application of WP Co. LLC*, 201 F. Supp. 3d 109 (D.D.C. 2016) ....... 5, 6, 7, 8

*In re Application of WP Co. LLC*, No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ............................................................... 5, 6, 7, 8, 9

*MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ..... ................................................................................................................ 7, 8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ........................................... 6

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ...................................... 7

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) .......................................... 6

*United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188 (9th Cir. 2011) .......................................................................................... 5, 7

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ..................................... 8

**Other Authorities**

Christina Wilkie and Dan Mangan, *Sen. Richard Burr Steps Down as Senate Intel Chair During Probe of Coronavirus Stock Sale*, CNBC (May 14, 2020), https://perma.cc/WW25-LZM7 ............................................................... 2

David Shortell, Evan Perez, Jeremy Herb, and Kara Scannell, *Justice Department Reviews Stock Trades by Lawmakers after Coronavirus Briefings*, CNN (Mar. 30, 2020), https://perma.cc/XA7C-LZKV ............................................ 3

Del Quentin Wilber and Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), http://lat.ms/2N0cTNh ................................................................... 4, 8

Eric Lipton and Nicholas Fandos, *Senator Richard Burr Sold a Fortune in Stocks as G.O.P. Played Down Coronavirus Threat*, N.Y. Times (Mar. 19, 2020), https://perma.cc/K4S7-5XPK ................................................................... 3

James F. Peltz, *Stocks Tumble as Coronavirus Spreads, Sparking Worry of Global Economic Shutdown*, L.A. Times (Feb. 24, 2020) ................................... 3

Jennifer Haberkorn, Sarah D. Wire, and Del Quentin Wilber, *Sen. Burr Steps Aside as Intelligence Committee Chair After FBI Warrant in Stock Inquiry*, L.A. Times (May 14, 2020), http://lat.ms/3k2U6wP ................................................................. 4

Jonah Engel Bromwich, *Who Are the Members of the Senate Intelligence Committee?*, N.Y. Times (June 8, 2017), https://perma.cc/Q8T7-JV99 ............... 2

Katie Benner and Nicholas Fandos, *Richard Burr Steps Back from Senate Panel as Phone Is Seized in Stock Sales Inquiry*, N.Y. Times (May 14, 2020), https://perma.cc/Q7Z7-NC4S ............................................................................ 4, 9

Mary Clare Jalonick and Brian Slodysko, *Senators Deny Trading on Virus Info as Scrutiny Mounts*, AP News (Mar. 20, 2020), http://bit.ly/3ueBiPJ .................... 2, 3

Matt Phillips, Jason Horowitz, and Choe Sang-Hun*, U.S. Stocks Plunge as Coronavirus Crisis Spreads*, N.Y. Times (Feb. 24, 2020), https://perma.cc/YVN6-YNUT ........................................................................ 3

Senator Burr, *Richard Burr, U.S. Senator for North Carolina* (last visited Feb. 15, 2021), https://perma.cc/9YUK-YQM8 ................................................................. 2

Vanessa Romo, *DOJ Drops Insider Trading Investigation Into Sen. Richard Burr*, NPR (Jan. 19, 2021), https://perma.cc/EU3S-RFYH ......................................... 4, 8

## **PRELIMINARY STATEMENT**

By its Application, Los Angeles Times Communications LLC (the "Los Angeles Times" or "Applicant") respectfully seeks an order unsealing the search warrant, application, any supporting affidavits, return, docket sheet, and any other judicial records connected to the search warrant served upon Senator Richard Burr at his residence in the Washington, D.C. area on or about May 13, 2020 (the "Search Warrant Materials") in connection with a now-completed federal law enforcement investigation into stock sales he made following non-public congressional briefings about the novel coronavirus.

This Court has recognized that the public has a qualified right to inspect search warrant materials in closed investigations under both the First Amendment and common law. The First Amendment presumption of access to such materials can be overcome only by a showing that sealing is necessary to serve a compelling interest, and any such sealing must be narrowly tailored to that interest. Under the common law, courts must balance the public's right to inspect search warrant materials against countervailing interests demonstrated by the party seeking to maintain those materials under seal. For the reasons herein, under either framework, the Court should order the Search Warrant Materials unsealed.

## FACTUAL BACKGROUND

Senator Burr is serving in his third term as the senior United States Senator for North Carolina.  *See* Senator Burr, *Richard Burr, U.S. Senator for North Carolina* (last visited Feb. 15, 2021), https://perma.cc/9YUK-YQM8.  Senator Burr served as Chairman of the Senate Intelligence Committee from January 2015 to May 2020, and currently serves as Ranking Member of the Senate Committee on Health, Education, Labor and Pensions ("HELP Committee").  *See* Jonah Engel Bromwich, *Who Are the Members of the Senate Intelligence Committee?*, N.Y. Times (June 8, 2017), https://perma.cc/Q8T7-JV99; Christina Wilkie and Dan Mangan, *Sen. Richard Burr Steps Down as Senate Intel Chair During Probe of Coronavirus Stock Sale*, CNBC (May 14, 2020), https://perma.cc/WW25-LZM7; Senator Burr, *supra*.

Senators received a closed-door briefing on the coronavirus on January 24, 2020.  *See* Mary Clare Jalonick and Brian Slodysko, *Senators Deny Trading on Virus Info as Scrutiny Mounts*, AP News (Mar. 20, 2020), http://bit.ly/3ueBiPJ.  The HELP Committee, on which Senator Burr serves, also received a non-public briefing about the coronavirus on February 12, 2020.  *Id*.  On February 13, 2020, Senator Burr and his wife sold 33 stocks collectively worth between $628,000 and $1.72 million, including as much as $150,000 worth of stock in two hotel chains, Wyndham Hotels and Resorts and Extended Stay America, and as much as

$65,000 worth of stock in Park Hotels & Resorts. *See* Eric Lipton and Nicholas Fandos, *Senator Richard Burr Sold a Fortune in Stocks as G.O.P. Played Down Coronavirus Threat*, N.Y. Times (Mar. 19, 2020), https://perma.cc/K4S7-5XPK.

Thereafter, around February 24, 2020, the U.S. stock market began to decline due to concerns about the economic effects of the coronavirus pandemic. *See* James F. Peltz, *Stocks Tumble as Coronavirus Spreads, Sparking Worry of Global Economic Shutdown*, L.A. Times (Feb. 24, 2020), http://lat.ms/3krp2XO. And Senator Burr's February 2020 stock transactions, which were documented in mandatory filings to the Senate, "attracted heavy scrutiny as the coronavirus pandemic continue[d] to disrupt everyday life, wiping out jobs and personal wealth." Jalonick and Slodysko, *supra*.

In March 2020, the Department of Justice launched an investigation into stock trades made by Senator Burr and other senators around the time the coronavirus pandemic began to take hold in the United States. *See* David Shortell, Evan Perez, Jeremy Herb, and Kara Scannell, *Justice Department Reviews Stock Trades by Lawmakers after Coronavirus Briefings*, CNN (Mar. 30, 2020), https://perma.cc/XA7C-LZKV.

In connection with that investigation, the FBI served a search warrant on Senator Burr at his Washington, D.C. area home on or about May 13, 2020, and took custody of the senator's cell phone that same day. *See* Del Quentin Wilber

3

and Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), http://lat.ms/2N0cTNh. Public reports noted that, in light of the "sensitivity surrounding the decision to obtain a search warrant on a sitting senator," the decision to serve the warrant on Senator Burr "was approved at the highest levels of the department . . . meaning that Attorney General William P. Barr signed off on it."  Katie Benner and Nicholas Fandos, *Richard Burr Steps Back from Senate Panel as Phone Is Seized in Stock Sales Inquiry*, N.Y. Times (May 14, 2020), https://perma.cc/Q7Z7-NC4S. Senator Burr stepped down as Chairman of the Senate Intelligence Committee the next day.  *See* Jennifer Haberkorn, Sarah D. Wire, and Del Quentin Wilber, *Sen. Burr Steps Aside as Intelligence Committee Chair After FBI Warrant in Stock Inquiry*, L.A. Times (May 14, 2020), http://lat.ms/3k2U6wP.

On January 19, 2021, Senator Burr announced that the government had closed its investigation into his stock trades; no charges were filed.  *See* Vanessa Romo, *DOJ Drops Insider Trading Investigation Into Sen. Richard Burr*, NPR (Jan. 19, 2021), https://perma.cc/EU3S-RFYH.

Upon information and belief, the Search Warrant Materials, including the case number associated with those materials, remain sealed in their entirety.

## ARGUMENT

I. **Applicant has both a First Amendment and a common law right to inspect the Search Warrant Materials.**

Search warrants obtained pursuant to Rule 41 of the Federal Rules of Criminal Procedure, as well as the applications, supporting affidavits, and returns filed in connection therewith, are routinely made public after the search warrant is executed, as a matter of standard practice in this and other federal courts. *See, e.g.*, *In re Application of WP Co. LLC* ("*In re WP II*"), 201 F. Supp. 3d 109, 121 (D.D.C. 2016) (stating that "'warrant applications and receipts are routinely filed with the clerk of court without seal'" (citation omitted)); *In re Application of N.Y. Times Co.* ("*In re N.Y. Times*"), 585 F. Supp. 2d 83, 88 n.8 (D.D.C. 2008) (noting that "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available"); *see also United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193–94 (9th Cir. 2011) (same).

Indeed, this Court has recognized that the public has a qualified right to inspect search warrant materials in closed investigations as a matter of both constitutional and common law. *See In re Application of WP Co. LLC* ("*In re WP I*"), No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) (recognizing a First Amendment right of access to search warrant records from closed investigation); *In re N.Y. Times*, 585 F. Supp. 2d at 92 (recognizing both

5

First Amendment and common law rights of access to warrant materials after conclusion of investigation).

In determining whether the First Amendment guarantees a qualified right of access to a particular type of document or proceeding, courts look to the complementary and related considerations of "experience and logic," *i.e.* (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 9 (1986); *In re N.Y. Times*, 585 F. Supp. 2d at 87. Applying this framework, this Court has held that the First Amendment presumption of public access applies to search warrant materials after an investigation has concluded. *In re WP I*, 2016 WL 1604976, at *2; *In re N.Y. Times*, 585 F. Supp. 2d at 88.

The common law, too, affords the public a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "[B]roader, but weaker" than the constitutional right, *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted), "[t]he common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Application of Leopold to*

6

*Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)).  This Court has concluded that Rule 41 search warrant materials are "judicial records" subject to the common law right of access because they are "central to a court's probable cause determination." *In re WP II*, 201 F. Supp. 3d at 129 (quoting *Custer Battlefield*, 658 F.3d at 1193); *see also In re N.Y. Times*, 585 F. Supp. 2d at 87 n.2 (noting that the government had conceded that search warrant materials are subject to the common law right of access).

**II.   No countervailing interest overcomes Applicant's common law and First Amendment rights to inspect the Search Warrant Materials.**

The First Amendment right of access can be overcome only if the party advocating for sealing or closure demonstrates that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *In re WP I*, 2016 WL 1604976, at *2 (citation omitted).  Any compelling interest "is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984) (citation omitted).

In determining whether the common law presumption in favor of public access requires unsealing of a particular judicial record, a court must "balance the

7

government's interest in keeping the document secret against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted). Specifically, courts in this Circuit consider:

> (1) The need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife, Inc.*, 865 F.3d at 665 (citing *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980)); *accord In re N.Y. Times*, 585 F. Supp. 2d at 92; *In re WP II*, 201 F. Supp. 3d at 118.

Here, no countervailing—let alone compelling—interests would justify the continued sealing of the Search Warrant Materials. The investigation into Senator Burr's stock sales has ended, and details of that investigation and the search warrant's execution have been reported on extensively, including by Applicant, and are widely known. *See* Wilber and Haberkorn, *supra*; Romo, *supra*. Accordingly, to the extent there are any "remaining law enforcement and privacy interests implicated by the public disclosure of the relevant warrant materials[,]" they are "insufficient to justify maintaining these warrants under seal." *In re WP I*, 2016 WL 1604976, at *2; *cf. In re WP II*, 201 F. Supp. 3d at 120–29 (holding First Amendment and common law rights of access to search warrant materials

8

overcome by privacy, reputational, and due process interests where personal conduct at issue was undisclosed, uncharged, and levied against a private citizen).[1]

Applicant's—and the public's— interest in access to the Search Warrant Materials at issue here is particularly strong, and that interest is not diminished because the investigation into Senator Burr's stock trades concluded without any charges being filed; the press and the public have a continued interest in scrutinizing the grounds for which the government sought—and obtained—a search warrant directed at a sitting United States senator, an unusual action that reportedly required approval from the highest levels of the Justice Department, *see* Benner and Fandos, *supra*. *In re N.Y. Times*, 585 F. Supp. at 90 ("Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police.").

Given the already strong First Amendment and common law presumptions in favor of public access to the Search Warrant Materials—a presumption that is only strengthened by the heightened public interest in this case—the Search Warrant Materials should be unsealed.

---

[1] Even assuming, *arguendo*, that a compelling interest necessitates the continued sealing of some portion of the Search Warrant Materials, limited sealing and/or redaction—not continued sealing of the records in their entirety—would be appropriate. *Id*; *see also In re WP I*, 2016 WL 1604976, at *3; *In re N.Y. Times*, 585 F. Supp. 2d at 94 (limiting redactions to information "that would tend to reveal the identity of a confidential informer").

## **CONCLUSION**

For the foregoing reasons, Applicant respectfully requests that the Court enter an order directing the Clerk of the Court to unseal the Search Warrant Materials.

Dated: February 24, 2021

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
ktownsend@rcfp.org
D.C. Bar No. 1026115
Jennifer A. Nelson
D.C. Bar No. 1011387
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Counsel for Applicant Los Angeles Times Communications LLC*