**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS | Miscellaneous Action No. 21-16 (BAH) |
| | Chief Judge Beryl A. Howell |
| | **UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

Los Angeles Times Communications LLC ("petitioner" or "L.A. Times") has petitioned the Court, in two motions, to unseal court records pertaining to a search warrant allegedly executed on United States Senator Richard Burr in connection with an insider-trading investigation, Pet'r's Mot. to Unseal Court Records ("Pet."), ECF No. 1, and to unseal the government's opposition to that motion, Pet'r's Mot. to Unseal Sealed Motion for Leave to File Document Under Seal ("Pet'r's' Mot. to Unseal Opp'n Mem."), ECF No. 11.  For the reasons set out below, both motions are denied.

I.    **BACKGROUND**

On February 13, 2020, Senator Burr and his wife sold stocks worth between $628,000 and $1.72 million, which stock sales were disclosed in mandatory Senate filings.  Pet'r's Mem. of Law in Supp. of Pet. ("Pet'r's Mem.") at 2–3, ECF No. 1-1 (citing Eric Lipton and Nicholas Fandos, *Senator Richard Burr Sold a Fortune in Stocks as G.O.P. Played Down Coronavirus Threat*, N.Y. Times (Mar. 19, 2020), https://www.nytimes.com/2020/03/19/us/politics/richard-burr-stocks-sold-coronavirus.html).  These trades attracted press scrutiny and public attention in light of a subsequent stock market decline and briefings that Senator Burr received on the developing COVID-19 pandemic both in his capacity as a United States Senator and as a

1

member of the Senate Committee on Health, Education, Labor and Pensions. *Id.* at 7 (citing Mary Clare Jalonick and Brian Slodysko, *Senators Deny Trading on Virus Info as Scrutiny Mounts*, AP News (Mar. 20, 2020), https://apnews.com/article/health-ap-top-news-virus-outbreak-politics-richard-burr-5d0279fc73d040a1a287f47ed20b4fd5).

The L.A. Times reported, on May 13, 2020, that Senator Burr had been served with a search warrant in connection with an alleged investigation into stock sales. *Id.* at 3–4 (citing Del Quentin Wilber and Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), http://lat.ms/2N0cTNh).  This report was based on a statement from a law enforcement official "speaking on condition of anonymity to discuss a law enforcement action."  Wilber and Haberkorn, *supra*.  Eight months later, Senator Burr made a public statement indicating that an investigation into the stock transactions had been closed.  Pet'r's Mem. at 4 (citing Vanessa Romo, *DOJ Drops Insider Trading Investigation Into Sen. Richard Burr*, NPR (Jan. 19, 2021), https://www.npr.org/2021/01/19/958622574/doj-drops-insider-trading-investigation-into-sen-richard-burr).  The United States Department of Justice has never acknowledged the existence of an investigation into Senator Burr.

Petitioner believes that materials relating to the alleged search warrant are sealed on this Court's docket and now seeks an order unsealing all materials associated with the search warrant, including "the search warrant application, supporting affidavits, the search warrant itself, the return, the docket sheet, and any other judicial records connected to the search warrant served on Senator Burr at his residence in the Washington, D.C. area on or about May 13, 2020." Pet. at 1–2.[1]

---

[1]     Local Criminal Rule 57.6 provides that: "Any news organization or other interested person, other than a party or a subpoenaed witness, who seeks relief relating to any aspect of proceedings in a criminal case, or relief

The government filed under seal and *ex parte* an opposition to the motion. *See* Gov't's Notice Of Filing, ECF No. 10 (giving "notice that, on March 31, 2021, [the government] filed under seal and *ex parte* [] the Government's Response in Opposition to Motion to Unseal Court Records"); Gov't's Opp'n, ECF No. 12 (sealed).  Petitioner then filed a motion to unseal the government's sealed motion for leave to file the opposition—which includes the opposition memorandum as an exhibit—or, in the alternative, to order the government to file a redacted version of its sealed filings on the public docket.  Pet'r's Mot. to Unseal Opp'n Mem. at 1.  The government has filed under seal and *ex parte* an opposition to this motion as well.  *See* Gov't's Notice of Filing, ECF No. 14 (giving "notice that, on April 14, 2021, [the government] filed under seal and *ex parte* [] the Government's Response in Opposition to Motion of Los Angeles Times Communications LLC to Unseal Sealed Motion for Leave to File Document Under Seal, Government Response in Opposition to Motion to Unseal, and Attached Exhibits"); Gov't's Opp'n to Pet'r's Mot. to Unseal Opp'n Mem., ECF No. 13-1 (sealed).  Both of petitioner's motions are now ripe for review.

## II.    LEGAL STANDARD

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." *In re Application of WP Co. LLC* ("*In re WP II*"), 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 (D.D.C. 2013)).  The pending motions implicate both.

---

relating to a criminal investigative or grand jury matter, shall file an application for such relief with the Court." LCrR 57.6.  "An application that pertains to a criminal investigative or grand jury matter to which no judge has been assigned shall be referred by the Clerk to the Chief Judge for determination." *Id.*  This matter was reassigned to the undersigned Chief Judge on May 11, 2021, pursuant to this local rule.  Notice of Reassignment, ECF No. 15.

## A.  Common Law Right of Access

The D.C. Circuit has explained that "there is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)).  Yet, "not all documents filed with courts are judicial records" subject to this presumption.  *Id.* at 1128 (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3  (D.C. Cir. 2013)); *see also Am. Int'l Grp.*, 712 F.3d at 4 (finding consultant reports were not judicial records because district court "made no decisions about them or that otherwise relied on them"); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (finding plea agreement that played no role in any adjudicatory function was not judicial record).  Instead, "whether something is a judicial record depends on the role it plays in the adjudicatory process."  *Leopold*, 964 F.3d at 1128 (internal quotation marks and citation omitted).  Documents and other materials filed in court "intended to influence the court" are judicial records.  *Id.*

This common law "right to inspect and copy judicial records is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and "may be outweighed by competing interests," *Leopold,* 964 F.3d at 1127.  The Supreme Court has instructed, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.  The competing interests that may overcome the presumption favoring public access to judicial records have been "crafted [] into a six-factor test" originating in *Hubbard. Leopold*, 964 F.3d at 1127.  The *Hubbard* six-factor test "has consistently served as our lodestar" by "ensur[ing] that we fully account for the various public and private interests at stake," *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017), in evaluating motions to seal or to unseal and provide public access to judicial records.

4

The *Hubbard* test considers:

(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Leopold*, 964 F.3d at 1131 (quoting *Metlife*, 865 F.3d at 665); *see also id.* at 1129–30 (explaining

that unless "Congress has spoken directly to the issue at hand," the "common-law standard

enshrined in the *Hubbard* balancing test" governs "[]sealing decisions" (internal quotation marks

omitted) (quoting *Metlife*, 865 F.3d at 669)); *Hubbard*, 650 F.2d at 317–22.

**B. First Amendment Right of Access**

The First Amendment guarantees a qualified right of public access to criminal

proceedings and related court documents. *Globe Newspaper Co. v. Superior Court for Norfolk

Cty.*, 457 U.S. 596, 603–04 (1982). Bolstered by the Sixth Amendment's express right for a

"public trial" in "all criminal prosecutions," U.S. Const. amend. VI, public access to criminal

trials forms the core of this First Amendment constitutional right, *see Richmond Newspapers,

Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (explaining that "it would be difficult to single out any

aspect of government of higher concern and importance to the people than the manner in which

criminal trials are conducted"). A similar right of access has been found to arise wherever "(i)

there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a

significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d

793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers*, 448 U.S. at 573). Under this so-

called "'experience and logic' test," *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

918, 934 (D.C. Cir. 2003), "both these questions must be answered affirmatively before a

constitutional requirement of access" attaches, *In re Reporters Comm. for Freedom of the Press*,

773 F.2d 1325, 1332 (D.C. Cir. 1985). Applying this standard, the Supreme Court has

recognized a First Amendment right of access to criminal trials, *voir dire* proceedings, and preliminary hearings, while the D.C. Circuit has extended such a right to completed—but not uncompleted—plea agreements. *See Brice*, 649 F.3d at 795–96 (citing authorities).

Even where the First Amendment provides a right of public access, however, this right is "'qualified' and is not absolute." *In re Application of New York Times Co. for Access to Certain Sealed Court Records.* ("*In re New York Times*"), 585 F. Supp. 2d 83, 90 (D.D.C. 2008); see also *Brice*, 649 F.3d at 795. In particular, the presumption of public access may be overridden upon a showing that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Brice*, 649 F.3d at 796 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)).

## III.    DISCUSSION

Petitioner raises both the common law and First Amendment in asserting the right to access to inspect the alleged search warrant materials. Assuming that the requested materials exist, and that the qualified public right of access attaches, no disclosure of search warrant materials would be appropriate in a closed, non-public investigation that has not resulted in criminal charges, and where individual privacy and governmental interests may be implicated.[2]

---

[2]    As a threshold matter, whether any First Amendment right of access would attach under the experience-and-logic test is unclear. *See In re WP II*, 201 F. Supp. 3d at 122 (observing that "without an indictment, even a 'closed' investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment"); *see also United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Account No. 7986104185*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009). While the D.C. Circuit has not addressed whether the common law right of access provides a qualified right of access to search warrant-related documents submitted to the Court, this Court has previously found that the right of access generally attaches to such materials after the relevant criminal investigation has concluded. *See In re WP II* 201 F. Supp. 3d at 128–29; *see also United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1192 (9th Cir. 2011) (collecting cases from the Second, Fourth, and Seventh Circuits holding that the common law right of access applies in these circumstances, and adopting that position).

Petitioner asserts that no countervailing interest in privacy exists to overcome the asserted public interest in accessing any search warrant materials that might exist. As support for this position, petitioner points to (1) the termination of any investigation into Senator Burr's stock sales, Pet'r's Mem. at 8; (2) the fact that "details of that investigation and the search warrant's execution have been reported on extensively, including by [petitioner], and are widely known," *id.*; and (3) the "particularly strong" public interest in the materials at issue, which public interest has "not diminished because the investigation into Senator Burr's stock trades concluded without any charges being filed," *id.* at 9.

Under either the common law or First Amendment standards, petitioner's arguments fail. Petitioner's reliance on *In re Application of WP Co. LLC* ("*In re WP I*"), Case No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016), and *In re N.Y. Times*, 585 F. Supp. 2d 83, is misplaced since both cases are inapposite. In one, the relevant investigation had been acknowledged by the government and led to multiple, public criminal prosecutions. *In re WP I*, 2016 WL 1604976, at *2. In the other, the government had acknowledged the relevant investigation, and the suspect had "himself filed a lawsuit against the Department of Justice and placed some details regarding the searches in the public eye." *In re N.Y. Times*, 585 F. Supp. 2d at 91.

Most importantly, petitioner does not confront this Court's opinion in *In re WP II*, which squarely rejected an attempt to expand the holding of *In re WP I* from materials in investigations that had been acknowledged by the government to those in investigations that had not been acknowledged by the government. *See In re WP II*, 201 F. Supp. 3d at 122–23. In the latter case, several distinct interests—privacy interests of the subject of the investigation, privacy interests of third parties, and investigative interests of the government—may be implicated.

First, when an investigation has not led to criminal prosecution, the subject of the criminal investigation has significant privacy interests, "including 'avoiding the stigma of having [the subject's] name associated with a criminal investigation' and 'keeping secret the fact that they were subjects of a law enforcement investigation,' as well as 'a second, distinct privacy interest in the contents of the investigative files.'" *Id.* at 123 (alteration in original) (citing *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091–92 (D.C. Cir. 2014)); *see also id.* at 124 (emphasizing the needed to avoid "'the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing,' particularly where individuals lack the opportunity 'to clear their names at trial'" (quoting *United States v. Smith*, 985 F. Supp. 2d 506, 526 (S.D.N.Y. 2013)). Second, such warrant materials may implicate the privacy interests of third parties. *Id.* at 123. Third, interests of the government can also be implicated, as the government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 127 (citing *Smith v. Lanier*, 726 F.3d 166, 167 (D.C. Cir. 2013)). Preservation of witness anonymity "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59 (1957).

These interests are no less great where some of the relevant information has been reported on in the news media. Without acknowledgment by the government, media coverage regarding the existence of a criminal investigation or search warrant does not extinguish the substantial privacy interests underlying search warrant materials, particularly where the specific information in the materials has not been disclosed. *In re WP II*, 201 F. Supp. 3d at 130.

8

The reasoning of *In re WP II* applies with full force here. Petitioner represents that any investigation into Senator Burr's stock trades was terminated without charges but does not allege or even suggest that the government voluntarily disclosed that information or, for that matter, any information related to the alleged investigation or any information regarding the contents of the requested search warrant. Indeed, the news sources cited by petitioner cite only an anonymous source for existence of the search warrant and its execution, and provide no information about the alleged search warrant, beyond the supposed date and place of execution, and a description of a single seized item. Pet. at 3–4 (citing Wilber and Haberkorn, *supra*).

For those reasons, and assuming the existence of the requested search warrant materials, the various privacy and government interests in the contents of any search warrant materials— whether framed as privacy interests (under the common law approach) or compelling interests in closure (under the First Amendment approach)—would outweigh the public's interest in disclosure.[3]

---

[3] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This Memorandum Opinion makes public as much of the legal analysis as possible while protecting the varied and compelling privacy interests at stake. The petitioner's motion to unseal the government's opposition, Pet'r's Mot. to Unseal Opp'n Mem., is denied for the same reason that the petitioner's motion to unseal the search warrant materials is denied. ████████████████████████████████████████████████████████████████████████████████████████

The petitioner also takes issue with the Court's order granting the government's motion to file its opposition memorandum under seal, Pet'r's Mot. to Unseal Opp'n Mem. at 4 n.1, citing *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), which petitioner argues requires both that petitioner be provided an opportunity to be heard on the sealing motion and that the Court set forth factual findings on the record before granting the sealing motion. That case, however, sets forth "Procedures for Sealing Plea Agreements," *id.* at 288, that do not necessary apply generally to all motions to seal. Moreover, even if the test from *Robinson* applied here, the D.C. Circuit acknowledged in that case that in some cases it would be necessary for motions to seal and the district court findings reached in granting those motions to be sealed themselves. *Id.* at 289 n.10. This is such a

## IV.    CONCLUSION AND ORDER

The principles articulated in *In re WP II* dictate the result here.  In closed investigations not acknowledged by the government, public access to materials has historically been limited, and petitioner presents no reason to believe that the significant interests that counsel against such access would not be present in this case.  Accordingly, it is hereby

**ORDERED** that Los Angeles Times Communications LLC's Motion to Unseal Court Records, ECF No. 1, is **DENIED**; and it is further

**ORDERED** that Los Angeles Times Communications LLC's Motion to Unseal Sealed Motion for Leave to File Document Under Seal, Government Response in Opposition to Motion to Unseal, and Attached Exhibits, ECF No. 11, is **DENIED**.

**SO ORDERED**

Date:  May 26, 2021

_____
BERYL A. HOWELL
Chief Judge

case.

10