# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS** | Misc. Action No. 1:21-mc-16 |

**GOVERNMENT'S BRIEF IN SUPPORT OF CONTINUED
SEALING OF CERTAIN PARTS OF THE SEARCH WARRANT MATERIALS**

In May 2020, in the course of an investigation into allegations of insider trading, the Department of Justice sought and obtained a search warrant for the mobile telephone of United States Senator Richard M. Burr. At that time, Applicant, the Los Angeles Times, learned of the warrant's existence through an unauthorized and improper disclosure of information from an anonymous "law enforcement official." Subsequently, in January 2021, the Department concluded its investigation without charges and informed Senator Burr of such. This Court has previously, and rightly, determined that "[i]n closed investigations not acknowledged by the government, public access to materials has historically been limited." ECF No. 17 at 10. The Department's closed investigation has now been acknowledged publicly and officially by multiple parties—including by Senator Burr, in announcing that he had been informed that the investigation had been closed; by the Securities and Exchange Commission, in public filings related to a separate investigation; and by the Department in this matter. *See* ECF No. 24. In light of these changed circumstances, limited unsealing of the search warrant, application, supporting affidavit, and docket sheet (hereinafter, "the Materials") are appropriate. But substantial privacy and law enforcement interests—including those of Senator Burr, of the Department, and of private third parties—counsel in favor of substantial redactions to the public versions of the Materials.

I.      **FACTUAL BACKGROUND**

   A.      **The Department's Investigation Involving Senator Burr**

The Department of Justice's Public Integrity Section, United States Attorney's Office for the District of Columbia, and Federal Bureau of Investigation ("the Department") opened a criminal investigation into Senator Burr's investment activity in March 2020. Specifically, the Department sought to determine whether Senator Burr sold or purchased stock based on non-public information relating to the COVID-19 pandemic that he received by virtue of his position as a United States Senator, in violation of the Stop Trading on Congressional Knowledge Act. *See* 15 U.S.C. §§ 78j(b), 78u-1(g). In January 2021, the Department closed the investigation without seeking an indictment.

   B.      **The Rule 41 Search Warrant for Senator Burr's Phone and the Unauthorized Disclosure to the Applicant**

In the course of its investigation of Senator Burr, on May 13, 2020, the Department applied for and received from Chief Judge Beryl A. Howell a Rule 41 warrant for the search and seizure of certain data on Senator Burr's mobile phone. The affidavit filed in support of the Department's application contained detailed, sensitive information, including private financial information of Senator Burr and other individuals; information gained from the cooperation of private third-party witnesses; and descriptions of the Department's law enforcement techniques and processes in the course of the investigation. Because the affidavit and other materials contained sensitive information, the Department also sought and received from Chief Judge Howell an order sealing the application, affidavit, and related materials. FBI agents executed the warrant on the evening of May 13, 2020. Later that same evening, Applicant published an article reporting on the warrant, citing as its source "a law enforcement official" who had spoken "on condition of anonymity to

discuss a law enforcement action."[1]  The same article stated that "Kerri Kupec, a Justice Department spokeswoman, declined to comment."  This troubling unauthorized disclosure prompted supervisors in the Public Integrity Section and United States Attorney's Office to immediately make a referral to the Department of Justice's Office of Professional Responsibility (OPR) for appropriate action.

        C.       **The Procedural History of This Matter**

On February 24, 2021, Applicant filed an application seeking disclosure of sealed court records relating to the Department's investigation.  *See* ECF No. 1.  The Department opposed, giving notice to Applicant of the filing of its opposition *ex parte* and under seal.  *See* ECF No. 10.  At the time, the Department had not publicly acknowledged that it had conducted an investigation regarding Senator Burr, and certainly had not confirmed the existence of the Materials.  On May 26, 2021, this Court determined that, assuming the existence of the then-unacknowledged Materials, "the various privacy and government interests . . . whether framed as privacy interests (under the common law approach) or compelling interests in closure (under the First Amendment approach)—would outweigh the public's interest in disclosure."  ECF No. 17 at 9.  Following appellate litigation, the D.C. Circuit remanded this matter to the Court for reconsideration of the common law right of access to the Materials, in part because of "new disclosures from a related investigation by the Securities and Exchange Commission and Senator Burr's public acknowledgment of the Justice Department's investigation . . . ."  *L.A. Times Communs., LLC v. United States (In re L.A. Times Communs. LLC)*, 28 F.4th 292, 295 (D.C. Cir. 2022).  In response

---

[1] Del Quentin Wilber and Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), available online at https://www.latimes.com/politics/story/2020-05-13/fbi-serves-warrant-on-senator-stock-investigation.

to a minute order issued by this Court, on May 24, 2022, the Department acknowledged that a year and half after Applicant first sought access to the Materials, this matter is in a different posture for reasons that include public recognition of the Department's investigation—including by Senator Burr, in announcing publicly that he had been informed that the investigation was being closed,[2] by the Securities and Exchange Commission in separate litigation;[3] and now, by the Department, s*ee* ECF No. 24.

By minute order on May 27, 2022, this Court directed the Department to "submit on the public docket a public version of the Materials … along with any brief addressing why any Materials should remain under seal." 5/27/2022 Minute Order. Accordingly, as Exhibit A accompanying this brief, the Department submits the Materials on the public docket, with substantial redactions.

## II.   APPLICABLE LEGAL PRINCIPLES

Courts have long recognized a qualified right of access to search warrant materials under both the First Amendment and common law. *See, e.g.*, *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83, 87 (D.D.C. 2008). Under both the First Amendment and common law, the limited unsealing proposed here by the Department meets or exceeds Applicant's right of access to the Materials.

---

[2] *See, e.g.,* Justice Dept. Ends Stock Trade Inquiry Into Richard Burr Without Charges, New York Times, Jan. 19, 2021, https://www.nytimes.com/2021/01/19/us/politics/richard-burr-stock-trades-investigation.html (last accessed June 14, 2022) (quoting Senator Burr as having stated, "Tonight, the Department of Justice informed me that it has concluded its review of my personal financial transactions conducted early last year. The case is now closed. I'm glad to hear it. My focus has been and will continue to be working for the people of North Carolina during this difficult time for our nation.").

[3] *See Securities and Exchange Commission v. Gerald Fauth*, 21-MC-787 (S.D.N.Y), ECF No. 3 at 9 (describing "a parallel investigation then being conducted by the Department of Justice").

### A. First Amendment Right of Access

Courts apply a two-step inquiry when determining right of access under the First Amendment. *See In re Leopold*, 300 F. Supp. 3d 61, 67 (D.D.C. 2018) (citing *Press-Enter. Co. v. Superior Court of Cal. For Riverside Cnty.*, 478 U.S. 1, 8-9 (1986)), *rev'd on other grounds*, 964 F.3d 1121, 1131 (D.C. Cir. 2020). First, courts must determine whether "experience and logic" dictate that a qualified right of access attaches to the proceeding or document in question. *Id.*; *see also In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 87 (D.D.C. 2008). Under this step of the inquiry, courts must determine whether "the place and process have historically been open to the press and general public" (*i.e.*, experience) and "whether public access plays a significant positive role in the functioning of the particular process in question" (*i.e.*, logic). *Id.* (citing *Press-Enter. Co.*, 478 U.S. at 8-9); *see also In re Leopold*, 300 F. Supp. 3d at 80-81 ("The public possesses a qualified First Amendment right of access to judicial proceedings where (i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding.") (internal quotations and citations omitted).

The second step of the inquiry calls for a balancing test to determine whether any overriding interests outweigh a finding of presumptive right of access under the first step of the inquiry. Specifically, courts must determine "whether 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest' nonetheless trumps any qualified right of access that attaches." *In re Leopold*, 300 F. Supp. 3d at 81 (quoting *Press-Enter. Co.*, 478 U.S. at 9). The government can overcome the presumption of access by showing that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there

are no alternatives to closure that would adequately protect the compelling interest." *Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 118 (D.D.C. 2016) (quoting *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011)).

### B. Common Law Right of Access

In addition to the First Amendment right, courts have recognized a "broader, but weaker, common law right" of access to public records, including certain "judicial records." *In re WP Co. LLC*, 201 F. Supp. 3d 109, 118 (D.D.C. 2016) (citing *United States v. El-Sayegh*, 131 F.3d 158, 160-61 (D.C. Cir. 1997)); *see also In re Leopold*, 300 F. Supp. 3d at 81 ("The common law also provides a right of access 'to inspect and copy public records and documents, including judicial records and documents.'" (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978))).

Like the First Amendment test, courts apply a two-step inquiry when determining right of access under common law. First, courts must decide whether the document sought is a "public record." Second, if the record in question is a "public record," courts must conduct a balancing test of the government's interests in keeping the record secret against the public's interest in disclosure. *See In re Leopold*, 300 F. Supp. 3d at 81.

The D.C. Circuit has articulated a six-factor test for purposes of conducting the balancing of competing interests under the common law right of access. *See MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017) ("[T]he *Hubbard* test has consistently served as our lodestar because it ensures that we fully account for the various public and private interests at stake.") (collecting citations)). Specifically, the *Hubbard* test requires consideration of the following factors:

1. The need for public access to the documents at issue;

2. The extent of previous public access to the documents;

3. The fact that someone has objected to disclosure, and the identity of that person;

4. The strength of any property and privacy interests asserted;

5. The possibility of prejudice to those opposing disclosure; and

6. The purposes for which the documents were introduced during the judicial proceedings.

*Leopold v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (citing *MetLife*, 865 F.3d at 665). Federal Rule of Criminal Procedure 6(e), however, which pertains to grand jury records, "expressly directs secrecy as the default position" as long as necessary to prevent unauthorized disclosure of matters occurring before the grand jury, "and thus displaces the common-law right of access." *Id*. at 1130 (citing *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998)).

## III.   ARGUMENT

The Department's proposed redactions, as presented in the copy of the Materials accompanying this brief in Exhibit A, satisfy or exceed any right of public access in the Materials.

### A. Even if a Qualified First Amendment Right of Access Applies to the Materials, the Department's Proposed Redactions are Necessary to Protect Privacy, Reputational, Due Process, and Law Enforcement Interests

As an initial matter, under the First Amendment "experience and logic" test, there is no right of access to the Materials. The D.C. Circuit has not determined whether there is a First Amendment right of public access to search warrant materials in closed cases that did not result in criminal charges. *See, e.g.*, *In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008) ("This Circuit has not entertained the question…whether or not there is a First Amendment qualified right of access to warrant materials

after an investigation has concluded."); *Computer Pros. for Soc. Resp. v. Secret Serv.*, No. 92-5140, 1993 WL 20050, at *1 (D.C. Cir. Jan. 5, 1993) ("[T]here is no clear tradition of public access to search warrant materials related to an ongoing investigation."). With respect to the first prong of the "experience and logic" test, there is no traditional regular access in this District to Rule 41 warrant materials from closed, uncharged cases. And regarding whether access to such materials would play a positive role in the functioning of the process in question—the second prong—the Department respectfully notes that, to the contrary, providing access to these materials could severely undermine the process by which courts determine whether to approve Rule 41 search warrant applications in the future. Specifically, providing access to these materials could have a chilling effect on the scope and quality of evidence that government investigators are willing to include in search warrant applications, as the prospect of subsequent public disclosure would undermine potential investigative leads or foreclose the possibility of witness cooperation. The negative impact of this chilling effect on the overall process is unquestionable, as courts would have to make findings of probable cause with limited information, both in terms of volume and quality, thereby hindering the overall process by which Rule 41 search warrant applications are reviewed and evaluated.

In any event, even if a First Amendment right of access to the Materials exists, that right is qualified—and the Department has now proposed redactions to the Materials that are "narrowly tailored" to serve the compelling privacy, reputational, due process, and law enforcement interests in them. *In re Leopold*, 300 F. Supp. 3d at 81 (quoting *Press-Enter. Co.,* 478 U.S. at 9). In the absence of the Department's proposed redactions, these compelling interests would be irreparably harmed, and the Department is proposing the redactions as the only alternative to closure that will adequately protect them.

In an analogous decision to this one, this Court determined that "three distinct, yet overlapping individual interests" exist in search warrant materials from closed investigations that do not result in criminal charges:

> First, the mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest. Second, the substance of the allegations of criminal conduct may reveal details about otherwise private activities that significantly implicate an individual's privacy interests…Finally, where, as here, a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations.

*Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016); *id*. at 125 ("[W]ithout an indictment, even a 'closed' investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment."). This Court also noted that law enforcement's interest "in preserving its ability to work with witnesses to obtain information regarding suspected crimes" and to do so secretly was compelling. *Id*. at 127.

Many of these same compelling interests are present in the Materials. Because the Department's investigation concluded without an indictment, Senator Burr holds acute individual interests against disclosure analogous to those in the grand jury context. These include the stigma that would affect Senator Burr's reputation; privacy interests regarding the details of his financial transactions that are included in the warrant; and his inability to refute the Department's early—and ultimately unavailing—allegations because the investigation never progressed to a courtroom. *See United States v. Smith*, 776 F.2d 1104, 1113-14 (3d Cir. 1985) (holding that sealing of a list of unindicted co-conspirators in a bill of particulars narrowly tailored to serve compelling privacy interest because "the named individuals have not been indicted and, accordingly, will not have an opportunity to prove their innocence in a trial. This means that the clearly predictable injuries to

the reputations of the named individuals is likely to be irreparable."). It is important to note that the Materials—and in particular, the affidavit in support of the warrant—constitute only a snapshot in time of the Department's understanding of the conduct at issue in the investigation. The Department's evidence developed and, in some significant instances, changed after the Materials were submitted to the Court. Public exposure of the unredacted Materials would unfairly present such evidence without context and without any formal process for response or explanation.

Furthermore, the unredacted Materials include extensive details of interviews with private third-party witnesses whose role in the investigation is not publicly known. This information gives rise to two different compelling interests. First, the witnesses have a compelling privacy interest—exposure of their cooperation could have severe, detrimental repercussions for their reputations and livelihoods. Second, the Department has a compelling law enforcement interest in maintaining its ability to secure cooperation from witnesses in the future, which would be harmed if their accounts were publicly exposed. In addition, the Department has a compelling law enforcement interest in maintaining under seal the portions of the Materials that describe the techniques that the Department employed in the course of its investigation. Public exposure of the Department's investigative techniques could cause the subjects of other investigations to change their conduct to evade detection and otherwise thwart future investigations of similar allegations.

In sum, the continued closure of portions of the Materials, as represented in the Department's proposed redactions, are necessary and appropriate to protect substantial and compelling interests within the redacted portions of the Materials. *See, e.g.*, *In re WP Co. LLC*, 2016 U.S. Dist. LEXIS 55924, 2016 WL 1604976 (D.D.C. 2016) (in publicly acknowledged investigation into campaign finance activities for the 2010 D.C. mayoral election, including successful prosecution, unsealing of court materials with redactions appropriate); *In re Application*

*of New York Times*, 585 F. Supp. 2d at 91 (government's compelling interest in keeping identity of informants secret could be accomplished by redacting information regarding the informants).

> **B.     Any Common Law Right of Access Is Also Outweighed by Compelling Privacy, Reputational, Due Process, and Law Enforcement Interests**

Next, taking the *Hubbard* factors in turn, it is clear that the compelling interests described above outweigh any common law right of access to the Materials, and that thus the Department's limited unsealing, with redactions, exceeds any such right.

<u>*Hubbard* Factor 1: The need for public access to the documents at issue.</u>

Even taking into account the "strong presumption in favor or public access to judicial proceedings," *Hubbard*, 650 F.2d at 318, there is not a compelling need for public access to the documents at issue. The "need" that Applicant provided in its initial application was "in scrutinizing the grounds for which the government sought—and obtained—a search warrant directed at a sitting United States senator, an unusual action that reportedly required approval from the highest levels of the Justice Department." ECF No. 1-1 at 13. In its appellate brief, Applicant advanced new interests in the Materials, including understanding whether the STOCK Act and "the regime governing the stock transactions of Members of Congress is adequate to its task." *Los Angeles Times Communications LLC, Petitioner-Appellant, v. United States*, Respondent-Appellee., 2021 WL 4306680 (C.A.D.C.), 31. But to the extent that Applicant or the public seeks access to the documents to gain insight into the Department's internal decision-making processes, ultimate charging decisions, or the applicability of the STOCK Act, the unredacted Materials will not provide it. The Affidavit was a narrative crafted early in the Department's investigation that does not reveal the basis for the Department's charging decisions or analyze the STOCK Act. Accordingly, there is no need, absent public curiosity, for the details contained in the redacted portions of the Department's proposal. *See Matter of the Application of WP Co. LLC*, 201 F. Supp.

3d 109, 130 (D.D.C. 2016) ("While the public's interest in holding its elected officials accountable is indeed strong, this secondary interest in gleaning additional information regarding the credibility of potential witnesses in high-profile criminal prosecutions is simply insufficient to overcome the compelling interests [therein].").

<u>Hubbard</u> Factor 2: The extent of previous public access to the documents.

This factor goes to "the extent to which the information sought was already in the public forum." *In re Application of New York Times*, 585 F. Supp. 2d at 93 (citing *Hubbard* at 650 F.2d at 318). The information related to the investigation of Senator Burr's securities activities is quite limited; it is, essentially, that there was an investigation; that there was a search warrant for Senator Burr's phone; and that the investigation concluded without charges. None of the information that is redacted in the Department's proposal was previously public, and thus this *Hubbard* factor weighs against any further access beyond the Department's proposal.

<u>Hubbard</u> Factor 3: The fact that someone has objected to disclosure, and the identity of that person.

Both the Department and Senator Burr, a subject of the Department's investigation at the time that the Department applied for and obtained the warrant, object to further disclosure of the Materials. The Department's opposition to further unsealing is consistent with its initial motion to seal and its earlier litigation in this matter. "The fact that a party moves to seal the record weighs in favor of the party's motion." *Upshaw v. United States*, 754 F. Supp. 2d 24, 29 (D.D.C. 2010) (citation omitted). Senator Burr's objection, combined with the Department's, also carries weight. *See E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) ("[O]nly one *Hubbard* factor counsels in favor of sealing the consent decree—the fact that the Center has objected to disclosure."). Furthermore, the third-party witnesses whose information is contained in the Materials are unaware of their role in the investigation and affidavit; if they were, they might

also object to the public release of that information. This factor too counsels in favor of continued sealing of the redacted portions of the Materials.

<u>Hubbard</u> Factor 4: The strength of any property and privacy interests asserted.

As described in the previous section, Senator Burr, private third parties, and the Department have significant, strong privacy interests in the continued sealing of the redacted portions of the Materials. Accordingly, this factor weighs in favor of the Department's proposed redactions.

<u>Hubbard</u> Factor 5: The possibility of prejudice to those opposing disclosure.

Also described in the previous section, there is a real possibility of prejudice to Senator Burr, private third parties, and the Department if the Materials were wholly unsealed. This potential prejudice strongly counsels in favor of continued closure and override Applicant's stated interest in the search warrant materials. *See In re WP Co. LLC*, 201 F. Supp. 3d. at 130 ("Beyond this significant privacy interest, the individual due process, reputational, and law enforcement concerns described above . . . further counsel against additional disclosure in this case. Given the public's limited access to the information contained in the sought-after materials, further disclosure would tangibly harm these interests.").

<u>Hubbard</u> Factor 6: The purposes for which the documents were introduced during the judicial proceedings.

Finally, this *Hubbard* factor also merits the continued sealing of the redacted portions of the Materials. The Materials were introduced into the judicial proceedings at an early point in the Department's investigation into Senator Burr, for the sole purpose of establishing probable cause. In *Hubbard*, the Court noted that the materials in question there—materials introduced by the defendants to challenge the lawfulness of a search and seizure—"were not determined by the trial judge to be relevant to the crimes charged; they were not used in the subsequent 'trial'; nor were

they described or even expressly relied upon by the trial judge in his decision on the suppression motion." 650 F.2d at 321. Here, the investigation in which the Materials were generated did not lead to any charges, were not used in a subsequent trial, and were not relied upon by the Court in any formal proceedings. This factor weighs in favor of continued sealing of the redaction portions of the Materials.

<u>If Grand Jury Information is Contained in the Materials</u>

Finally, to the extent that the narrative presented in the affidavit may rely upon grand jury records, it should remain sealed. The *Hubbard* "common-law inquiry must yield 'when Congress has spoken directly to the issue at hand.'" *Leopold v. United States*, 964 F.3d 1121, 1130 (D.C. Cir. 2020). And with respect to grand jury records, Congress has spoken, and determined that grand jury records should remained sealed "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(6); *see also McKeever v. Barr*, 920 F.3d 842, 849 (D.C. Cir. 2019) (stating that a basis for continued grand jury secrecy can last for decades, including after the death of witnesses); *In re Sealed Case No. 99-3091 (Office of Indep. Counsel Contempt Proceeding)*, 192 F.3d 995, 1002 (D.C. Cir. 1999) (noting "distinction of the utmost significance" between "statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a grand jury's investigation," and the "need to preserve the secrecy of the grand jury proceedings themselves.").

## IV. CONCLUSION

To meet or exceed any public right of access in the Materials, the Department has proposed redactions to them that are narrowly tailored to protect compelling interests of Senator Burr, private third parties, and the Department.

Respectfully submitted,

| | |
|---|---|
| MATTHEW M. GRAVES<br>UNITED STATES ATTORNEY<br>D.C. Bar Number 481052 | COREY R. AMUNDSON<br>Chief, Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice |
| /s/ *Molly Gaston*<br>Molly Gaston<br>Assistant United States Attorney<br>VA Bar Number 78506<br>United States Attorney's Office<br>601 D Street NW<br>Washington, D.C. 20001<br>Telephone: 202-252-7803<br>Email: Molly.Gaston@usdoj.gov | /s/ *Victor R. Salgado*<br>Victor R. Salgado<br>D.C. Bar # 975013<br>Senior Litigation Counsel<br>Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice<br>Telephone: 202-353-4580<br>Email: victor.salgado@usdoj.gov |