**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**IN RE APPLICATION OF LOS
ANGELES TIMES COMMUNICATIONS
LLC TO UNSEAL COURT RECORDS**

The Honorable Beryl A. Howell
Misc. Action No. 1:21-mc-00016

---

## <u>RESPONSE OF LOS ANGELES TIMES COMMUNICATIONS LLC<br>IN OPPOSITION TO CONTINUED SEALING</u>

Katie Townsend
ktownsend@rcfp.org
D.C. Bar. No. 1026115
Grayson Clary
gclary@rcfp.org
D.C. Bar No. 1735810
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone:  (202) 795-9300
Facsimile:  (202) 795-9310

*Counsel for Applicant Los Angeles Times
Communications LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT .................................................................................................................. 1

I.   The common law right of access requires further unsealing. .................................... 2

    A.   The Government's proposed redactions ignore the "powerful public interest" in access to the Warrant Materials that the D.C. Circuit made clear favors disclosure. ............... 3

    B.   The Government appears to have redacted public information. .................................... 5

    C.   Any residual privacy interests are attenuated by the information that is already public and the interest in evaluating the conduct of public officials or agencies...................... 8

    D.   The purpose for which the Warrant Materials were introduced in this Court—to obtain authorization for an extraordinary search—strongly favors unsealing. ....................... 12

II.  The First Amendment right of access also requires further unsealing. ................................. 14

    A.   Experience and logic favor access to search warrant materials. .................................... 14

    B.   The Government's redactions are not narrowly tailored to a compelling interest. ....... 17

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Barry v. United States*, 740 F. Supp. 888 (D.D.C. 1990) .............................................................. 12

*Bradley ex rel. AJW v. Ackal*, 954 F.3d 216 (5th Cir. 2020) .......................................................... 9

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) ....... 1, 4

*CNN v. FBI*, 984 F.3d 114 (D.C. Cir. 2021) ................................................................................. 13

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918 (D.C. Cir. 2003)............................. 12

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017).......................................................................... 16

*Doe Co v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014)................................................................ 11

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) ................................. 2, 11, 13

*El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam)............................... 17

*Federal Trade Comm'n v. Standard Fin. Management Corp.*, 830 F.2d 404 (1st Cir. 1987)...... 11

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 597 (1982) .................................................... 16

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)................................................. 15

*In re Application for 2703(D) Order for Three Email Accounts*, 584 F. Supp. 3d 31 (D.D.C. 2021) ........................................................................................................................................... 15

*In re Application of Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ................................................................................................ 15

*In re Application of Los Angeles Times*, No. 21-16, 2021 WL 2143551 (D.D.C. May 26, 2021) . 6

*In re Application of the Committee on the Judiciary*, 332 F.R.D. 412 (D.D.C. 2019) (Howell, C.J.) ........................................................................................................................................... 11

*In re Application of WP Company LLC* ("*In re WP I*"), No. 16-mc-351, 2016 WL 1604976 (D.D.C. Apr. 1, 2016) (Howell, C.J.)....................................................................... 1, 3, 15, 18

*In re Application of WP Company LLC* ("*In re WP II*"), 201 F. Supp. 3d 109 (D.D.C. 2016) (Howell, C.J.).................................................................................................................. 10, 13, 16

*In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152 (D.C. Cir. 2007)................................. 12

*In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292 (D.C. Cir. 2022) ............................. passim

*In re Motions of Dow Jones & Co.,* 142 F.3d 496 (D.C. Cir. 1998)............................................. 12

*In re N.Y. Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) ...................................................... passim

*In re Nat'l Broad. Co.*, 653 F.2d 609 (D.C. Cir. 1981) ................................................................. 5

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) ................................................................................. 12

*In re Reporters Committee for Freedom of the Press*, 773 F.3d 1325 (D.C. Cir. 1985) .............. 16

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ................................................................................................................................................ 3, 15

*Labow v. Dep't of Justice*, 831 F.3d 523 (D.C. Cir. 2016) ........................................................... 11

*McConnell v. FEC*, 251 F. Supp. 919 (D.D.C. 2003) ................................................................... 11

*MetLife v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ................................ 5

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ................................................................ 14

*Roviaro v. United States*, 353 U.S. 53 (1957) ................................................................................ 9

*Senate of P.R. v. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987) .............................................. 12

*United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009) ............................................................................................................................................. 14

*United States v. Custer Battlefield Museum*, 658 F.3d 1188 (9th Cir. 2011) ................................ 3

*United States v. Holy Land Foundation for Relief & Development*, 624 F.3d 685 (5th Cir. 2010) ......................................................................................................................................................... 10

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ................................................. 1, 4, 13

*United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) ........................... 1, 14

*United States v. Sealed Search Warrants*, 868 F.3d 385 (5th Cir. 2017) ................................... 17

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) ................................................................ 16

*United States v. Smith*, 787 F.2d 111 (3d Cir. 1986) .................................................................... 9

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ............................................................ 17

**Other Authorities**

Aruna Viswanatha, *DOJ Inquiry Into Sen. Richard Burr's Stock Trades Ends Without Charges*, Wall St. J. (Jan. 19, 2021), https://perma.cc/PE4M-B4KS ...................................................... 6

Brief for Appellee, *In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292 (D.C. Cir. Nov. 18, 2021) (No. 21-5128) ...................................................................................................................... 6

Charlie Savage, *Justice Dep't Will Toughen Rules for Seizing Lawmakers' Data, Garland Says*, N.Y. Times, https://perma.cc/3DCY-X6G4 .............................................................................. 14

Decl. of F. Joseph Warin, *SEC v. Fauth*, No. 1:21-mc-00787 (S.D.N.Y. Oct. 27, 2021) ............. 7

Del Quentin Wilber & Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), http://lat.ms/2N0cTNh ......... 8

Devlin Barrett et al., *Sen. Richard Burr Stepping Aside as Intelligence Committee Chair Amid FBI Investigation of Senators' Stock Sales*, Wash. Post. (May 14, 2020), https://perma.cc/4X8F-RDTN ................................................................................................... 5

Eric Tucker & Mary Clare Jalonick, *Justice Dept. Won't Charge Sen. Burr Over Stock Sales*, AP News (Jan. 19, 2021), https://bit.ly/3hgSfV1 ............................................................................ 6

Matt Zapotosky & Felicia Sonmez, *Justice Dept. Will Not Pursue Charges Against Sen. Richard Burr over Stock Sales at Outset of Pandemic*, Wash. Post (Jan. 19, 2021), https://perma.cc/2WMS-E2XX ................................................................................................... 6

Memorandum of Law, *Sec. & Exch. Comm'n v. Fauth*, No. 1:21-mc-00787 (S.D.N.Y. Oct. 20, 2021) .................................................................................................................. 7, 8, 10

Nicholas Fandos & Katie Benner, *Justice Dep't Ends Stock Trade Inquiry into Richard Burr Without Charges*, N.Y. Times (Jan. 19, 2021), https://perma.cc/T4A9-6Z3R .......................... 5

Robert Faturechi, *Burr's Brother-in-Law Called Stock Broker, One Minute After Getting off Phone With Senator*, ProPublica (Oct. 28, 2021), https://perma.cc/URX2-CR59 .................... 7

## ARGUMENT

The judicial records at issues in this case (the "Warrant Materials") implicate public interests of the highest order.  They were put before a federal court to obtain an authorization of enormous moment: a warrant to seize the property of a sitting United States Senator, whom the Government suspected of abusing his office to profit from a once-in-a-century pandemic.  Were this an ordinary case, both the common law and First Amendment would entitle the public to see for itself "that judges are not merely serving as a rubber stamp for the police" when approving warrants.  *In re Application of WP Company LLC* ("*In re WP I*"), No. 16-mc-351, 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) (Howell, C.J.) (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008)).  This exceptional case implicates even stronger public interests in favor of disclosure, including an interest "in shining a light" on the Government's investigation of "political corruption and the DOJ's ultimate decision not to prosecute a prominent member of Congress," *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1092–93, 1095 (D.C. Cir. 2014), as well as an interest in understanding whether the separation-of-powers concerns raised by a search targeting a member of a coordinate branch were given appropriate weight, *see United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 661 (D.C. Cir. 2007).

None of those interests can be advanced without some degree of press and public access to material the Government seeks to shield from public view almost entirely: the probable-cause showing.  Without that information, the public cannot evaluate either the Government's conduct in seeking the warrant or the Court's decision to grant it.  But the Government apparently adheres to the view that the public's rights of access—rights "fundamental to a democratic state," *United States v. Hubbard*, 650 F.2d 293, 315 n.79 (D.C. Cir. 1980) (citation omitted)— extend only to information the Government chooses at its sole discretion to confirm.  That

1

position is inconsistent with the core purpose of those rights, to ensure "the integrity of judicial proceedings in particular and of the law enforcement process generally," *id.* 315; inconsistent with the law of this Circuit; and inconsistent with the D.C. Circuit's mandate in this case.

The heart of this matter is the "powerful public interest in learning of a sitting Senator's potential violation of insider-trading laws based on information acquired in his official capacity." *In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022). The Government's disclosures—which consist entirely of information that was already public when Applicant's *original* petition was filed—contribute little, if anything, to the public's understanding. For the reasons herein, this Court should order further unsealing of the Warrant Materials.

**I.    The common law right of access requires further unsealing.**

As the parties agree, the common law analysis starts from a "strong presumption in favor of public access," *Hubbard*, 650 F.2d at 318, and any restrictions can be justified—if at all—only after close consideration of "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings," *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). Here, the balance of those factors requires additional unsealing. The Government's arguments to the contrary are, at base, nothing more than a quarrel with the D.C. Circuit's decision in this case. If the Government believes the D.C. Circuit erred, it should have filed a petition for rehearing or rehearing en banc. Not having done so, it cannot ask this Court to depart from the clear terms of the mandate.

A.     The Government's proposed redactions ignore the "powerful public interest" in access to the Warrant Materials that the D.C. Circuit made clear favors disclosure.

The Government's argument that "there is not a compelling need for public access to the documents," Gov't's Brief in Support of Continued Sealing at 11, is straightforwardly at odds with the D.C. Circuit's decision on appeal, *see In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298 (remanding for this Court to weigh "the powerful public interest in learning of a sitting Senator's potential violation of insider-trading laws based on information acquired in his official capacity"). That opinion compels the conclusion that the first *Hubbard* factor favors Applicant. But the same would be true if this Court were to approach the issue from scratch: The public has a clear, legitimate interest in understanding the grounds on which the Government sought—and obtained—a warrant to seize the property of a sitting U.S. Senator.

For one, regardless of the ultimate disposition of the investigation, the public is entitled to evaluate the basis upon which the search was authorized in the first place. As numerous courts, including this Court, have concluded, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988); *accord In re N.Y. Times Co.*, 585 F. Supp. 2d at 83; *In re WP I*, No. 16-mc-351, 2016 WL 1604976, at *2; *United States v. Custer Battlefield Museum*, 658 F.3d 1188, 1194 (9th Cir. 2011). Access to the probable-cause showing—which the Government proposes redacting nearly in its entirety—is necessary to that understanding: There is no meaningful sense in which access to warrant materials can check prosecutorial or judicial misconduct if the grounds for authorizing the search are insulated from any public scrutiny. The Government's

proposed redactions to the Warrant Materials are thus necessarily predicated on the view that this interest is entitled to no weight, a view that cannot be squared with past decisions of this Court.

The Government's proposed redactions would also reduce to nothing the public's interest "in shining a light" on the Government's investigation of "political corruption and the DOJ's ultimate decision not to prosecute a prominent member of Congress," *CREW*, 746 F.3d at 1092–93, 1095. The Government's insistence that additional unsealing of the Warrant Materials would provide no "insight into the Department's internal decision-making process" or "ultimate charging decisions" makes no practical sense. Gov't Brief in Support of Continued Sealing at 11. Access to the probable-cause showing would allow the public to understand how weak or strong the Government's original basis for investigating Senator Burr was, which in turn would inform the public's understanding of whether "the government had the evidence but nevertheless pulled its punches." *CREW*, 746 F.3d at 1093. While the Warrant Materials "may reflect only one data point" in the arc of the investigation, they undoubtedly capture "a significant one." *Id.* at 1094. *Hubbard* itself drew this intuitive connection, explaining that there would be a substantial public interest in access to warrant materials—there, documents seized pursuant to one—"where a governmental failure to prosecute in the light of overwhelming probable cause substantially impugns the integrity of the prosecutorial function." *Hubbard*, 650 F.2d at 323.

The interest in understanding the strength of the Government's probable-cause showing is only sharpened by the circumstances under which the "ultimate decision not to prosecute a prominent member of Congress," *CREW*, 746 F.3d at 1093, was reached. The investigation was closed on the eve of the transfer of power from one political party to the other, after several other "politically fraught cases" were also shelved in those final months. Nicholas Fandos & Katie Benner, *Justice Dep't Ends Stock Trade Inquiry into Richard Burr Without Charges*, N.Y. Times

(Jan. 19, 2021), https://perma.cc/T4A9-6Z3R.  The unusual course of the investigation fed public "doubts about the Justice Department's motives in Burr's case," Devlin Barrett et al., *Sen. Richard Burr Stepping Aside as Intelligence Committee Chair Amid FBI Investigation of Senators' Stock Sales*, Wash. Post. (May 14, 2020), https://perma.cc/4X8F-RDTN, spurring debate about whether the investigation was an act of political retaliation or, instead, whether the investigation's closure was a political favor.

Applicant does not, of course, prejudge whether the Warrant Materials would show that the Government's original evidence was weak or strong, or for that matter whether either Senator Burr or the Justice Department behaved anything but properly—proof of misconduct is not part of the common law analysis.  The point of the right of access is that members of the public are entitled to "consider for themselves" what to make of the evidence, *In re Nat'l Broad. Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981), to "uphold the integrity and legitimacy of an independent Judicial Branch," *MetLife v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017).  The Government's overbroad proposed redactions would smother that interest.

    B.    <u>The Government appears to have redacted public information.</u>

The second *Hubbard* factor weighs the extent of "previous access" to the information at issue.  650 F.2d at 318.  Critically, as the D.C. Circuit explained in its decision in this case, that analysis is not limited to information that the Government—or any other party defending secrecy—deigns to confirm:  It must also weigh "media reporting" and the disclosures of others, like Senator Burr himself.  *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298.  While the Government claims that "[n]one of the information that is redacted in the Department's proposal was previously public," Gov't's Brief in Support of Continued Sealing at 12," that suggestion does not stand up to scrutiny, especially in light of the Government's litigation conduct to date.

As an initial matter, in past filings, the Government has been less than forthcoming with this Court and the D.C. Circuit about information already in the public domain.  If Applicant had known, for instance, that the Government's sealed briefing to this Court claimed that the investigation had not been acknowledged by the Department of Justice, Applicant would have clarified on reply that a Department spokesperson confirmed the investigation's closure to multiple news organizations.[1]  This Court might have reached a different result in the first instance, without the need for a time-consuming appeal and remand, if the Government had not left this Court with the misimpression that the Department had not "voluntarily disclosed" the investigation's closure.  *In re Application of Los Angeles Times*, No. 21-16, 2021 WL 2143551, at \*4 (D.D.C. May 26, 2021) (relying on the Government's representation to that effect).  Similarly, the Government also failed to bring the SEC's filings to the attention of the D.C. Circuit even though those documents were filed—and widely covered in the news media—weeks before the Government's appellate brief was filed.  *See, e.g.*, Robert Faturechi, *Burr's Brother-in-Law Called Stock Broker, One Minute After Getting off Phone With Senator*, ProPublica (Oct.

---

[1]      *See, e.g.*, Eric Tucker & Mary Clare Jalonick, *Justice Dept. Won't Charge Sen. Burr Over Stock Sales*, AP News (Jan. 19, 2021), https://bit.ly/3hgSfV1 ("A Justice Department spokesman confirmed it would not bring charges[.]"); Matt Zapotosky & Felicia Sonmez, *Justice Dept. Will Not Pursue Charges Against Sen. Richard Burr over Stock Sales at Outset of Pandemic*, Wash. Post (Jan. 19, 2021), https://perma.cc/2WMS-E2XX ("A Justice Department spokesman confirmed the matter is closed[.]"); Aruna Viswanatha, *DOJ Inquiry Into Sen. Richard Burr's Stock Trades Ends Without Charges*, Wall St. J. (Jan. 19, 2021), https://perma.cc/PE4M-B4KS ("A spokesman for the Justice Department confirmed that the investigation had been closed[.]").  The Government has yet to explain how its claim that the investigation was never acknowledged can be squared with the contrary statements of an authorized spokesperson.  On appeal, it could only complain that these particular news articles were not brought to the attention of this Court—which, of course, the Government's insistence on secret, *ex parte* briefing prevented Applicant from doing.  *See* Brief for Appellee at 5 n.2, *In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292 (D.C. Cir. Nov. 18, 2021) (No. 21-5128).

28, 2021), https://perma.cc/URX2-CR59.  For these reasons, the Government's representations about the public record should be viewed warily.

Common sense likewise suggests that the Government has redacted public information.  For one, if the Warrant Materials contain any reference to Senator Burr's interactions with his brother-in-law, Gerald Fauth, the Government has redacted it.  It seems exceedingly unlikely that the Warrant Materials contain *no* such references, unless the Department failed to investigate— as the SEC has and is currently investigating—whether Senator Burr "illegally tipped the material nonpublic information he possessed to Fauth."  Memorandum of Law at 6, *Sec. & Exch. Comm'n v. Fauth*, No. 1:21-mc-00787 (S.D.N.Y. Oct. 20, 2021).  If the redacted portions *do* contain references to Fauth—himself a high-level government official, *see* Faturechi, *supra*— those restrictions are plainly overbroad because the SEC has already placed substantial information about his interactions with Senator Burr in the public domain.  As the D.C. Circuit noted, the SEC's filings already disclose, for instance, that the Justice Department investigated Fauth, as it did Senator Burr, *see id.* at 6,[2] and discuss "records of phone calls among Burr, Fauth, and their brokers" that underpinned the investigation, *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 296.  It should go without saying that the Government cannot redact information that appears not only in the SEC's filings but also in the D.C. Circuit's opinion.

It is almost certain that the Government's probable-cause showing overlaps with now-public information that laid the groundwork for the SEC's investigation—including information that, for that matter, Applicant had reported *before* filing its original unsealing petition.  As noted above, the SEC's filings describe evidence of Senator Burr's trading activities and

---

[2]   Fauth's counsel also confirmed as much in response to the SEC's filings.  Decl. of F. Joseph Warin, *SEC v. Fauth*, No. 1:21-mc-00787, at 3–4 (S.D.N.Y. Oct. 27, 2021).

communications derived from telephone and internet metadata.  *See* Memorandum of Law, *supra*, at 4–5—evidence consistent with Applicant's reporting in May of 2020 that a "law enforcement official said FBI agents served a warrant . . . on Apple to obtain information from Burr's iCloud account and said agents used data obtained from the California based company as part of the evidence used to obtain the warrant for the senator's phone," Del Quentin Wilber & Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), http://lat.ms/2N0cTNh.  If the Government concedes that the fact "that there was a search warrant for Senator Burr's phone" is public thanks to Applicant's reporting, Gov't Brief in Support of Continue Sealing at 12, it cannot ignore other facts about the basis for the warrant drawn from the very same article.  The extent of information already in the public domain about the Government's investigation, including the basis for the warrant targeting Senator Burr's cellphone, weighs heavily in favor of further unsealing.

    <u>C.</u>    <u>Any residual privacy interests are attenuated by the information that is already public and the interest in evaluating the conduct of public officials and agencies.</u>

The third, fourth, and fifth *Hubbard* factors ask variations on the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from unsealing.  In that analysis, it bears underlining that the common law right is not limited to information that is already public, or else there would be only one *Hubbard* factor (the extent of previous public access).  *See In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298 (explaining that the information that is already public also bears on the strength or not of any remaining privacy interests).[3]  Put another way, the Government's burden is not merely to show

---

[3]    *See also, e.g.*, *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) (public knowledge that an official had a "possible connection" to an investigation diminished privacy interest in the separate fact that he had received a target letter); *Bradley ex rel. AJW v. Ackal*, 954

"that the search warrant affidavits include more detail than what has already been reported by the media"; of course they do, which is why there is a public interest in knowing what they say. *United States v. Cohen*, 366 F. Supp. 3d 612, 626 (S.D.N.Y. 2019).  Instead, the Government can rebut the strong presumption in favor of access only by proving that cognizable interests would be "harmed" by those new details out of proportion to the values served by transparency.  *Id.*

It cannot do so.  The Government's argument relies on the interests of unnamed third-party witnesses, Senator Burr's objection to further disclosure, and—tautologically—its own objection.  Witness confidentiality can be an important interest, *see Roviaro v. United States*, 353 U.S. 53, 59 (1957), but "that interest can be accomplished by simply redacting the identity and personal identifiers of the informants," *In re N.Y. Times Co.*, 585 F. Supp. at 91.  It cannot plausibly support the extensive secrecy the Government continues to press in this case.

As to Senator Burr, any analysis of his interests must consider whether they are "diminished because the investigation involved actions taken by a public official in his public capacity" and diminished by the information that has already been made public—including by Senator Burr himself.  *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298.  As the D.C. Circuit underlined, the elected office Senator Burr holds and his decision to acknowledge the investigation "attenuate[]" his privacy interests, even if they are not "extinguish[ed]."  *Id.* (second alteration in original).  Against that backdrop, the Government's reliance on the generic claim that association with an investigation can harm an individual's reputation is inadequate.

As this Court has explained before, where warrant materials "stem[] from a publicly acknowledged investigation of widely known allegations of misconduct," any danger that

---

F.3d 216, 229 (5th Cir. 2020) (public knowledge that parties reached a settlement diminished privacy interest in the separate fact of its amount).

"disclosure would raise *new* privacy and reputational concerns" is "significantly minimiz[ed]."

*In re Application of WP Company LLC* ("*In re WP II*"), 201 F. Supp. 3d 109, 125 (D.D.C. 2016)

(Howell, C.J.) (emphasis added).  Here, "the fact that [Senator Burr] was under investigation and

that he has been cleared . . . is already known by the public," *In re N.Y. Times Co.*, 585 F. Supp.

2d at 91, and as a result "disclosure of the warrant materials in this case does not present the risk

that the identity of an innocent third person will be *newly* disclosed to the media," *id.* (emphasis

added).  Any sting to Senator Burr's reputation has already struck several times over, thanks in

part to his own decision to acknowledge the investigation.  If anything, the extent of the

Government's redactions leaves Senator Burr "hamstrung in [his] ability to mitigate the damage

done" by his very public association with a public corruption investigation.  *United States v.*

*Holy Land Foundation for Relief & Development*, 624 F.3d 685, 690 (5th Cir. 2010).

The same is true with respect to any interest the Government may claim in support of

concealing that it sought evidence of Senator Burr's communications with individuals who are

already identified by name in the SEC's public filings, including Brooke Burr and Mary Fauth.

*See* Memorandum of Law, *supra*, at 4–5 (describing Fauth's call to Brooke Burr and Senator

Burr's use of an IP address registered to Mary Fauth).  The Government cannot claim now that

those individuals have a privacy interest in avoiding association with an investigation to which

the Government itself has chosen to publicly tie them.

As to the Government's interests, its own objection to further disclosure has "a lesser

claim" to this Court's concern in the *Hubbard* balance because the Government "affirmatively

presented" the Warrant Materials to a court "in order to obtain an adjudication" of its entitlement

to search Senator Burr's phone.  *McConnell v. FEC*, 251 F. Supp. 919, 932 (D.D.C. 2003).

Moreover, the "appropriateness of making court files accessible is accentuated in cases where the

government is a party," *Nat'l Children's Ctr.*, 98 F.3d at 246 (quoting *Federal Trade Comm'n v. Standard Fin. Management Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)), because "the public has a strong interest in monitoring not only the functions of the courts but also the positions that its elected officials and government agencies take in litigation," *Doe Co v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014). This case, where the Government's insistence on total secrecy deprived this Court of information necessary to fairly weigh the interests at stake, highlights the importance of that principle as well as any. That the Government has urged extreme opacity throughout these proceedings makes public access more rather than less critical now.

Finally, the Government suggests—but does not state—that further disclosure would reveal grand jury material. To Applicant's knowledge, there is no basis in the public record to conclude that it would. As this Court has explained, "Rule 6(e) does not allow DOJ to 'draw a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'" *In re Application of the Committee on the Judiciary*, 332 F.R.D. 412, 415 (D.D.C. 2019) (Howell, C.J.) (quoting *Labow v. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016)). The bare fact that the Government may have presented the same evidence to this Court and a grand jury would not bring Rule 6(e) into play, because it would "shed[] no light on the direction the grand jury took but merely reflect[] the scope of a government investigation 'parallel' to the grand jury's." *Id.* at 416 (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 949 (D.C. Cir. 2003) (Tatel, J., dissenting)). That much is true even if the Government relied on grand jury material in drafting the Warrant Materials so long as it is not identified as such, because "the 'use' of grand jury material does not constitute 'disclosure' of that materials where no grand jury transcripts, exhibits, or witnesses are quoted or mentioned." *Id.* (quoting *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 583 n.30 (D.C. Cir. 1987)). The Government has not

11

attempted to make any "affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of [a] grand jury's investigation." *Senate of P.R.*, 823 F.2d at 584.

Even if the Government did make such a showing, though, it too would be qualified by the information that is already in the public domain.  As the D.C. Circuit has explained, while "it is commonly said that when the media reports information alleged to be grand jury material, 'the government is obligated to stand silent' and not confirm the information," nevertheless "[t]here must come a time . . . when information is sufficiently widely known that it has lost its character as Rule 6(e) material." *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (quoting *Barry v. United States*, 740 F. Supp. 888, 891 (D.D.C. 1990)).  Such cases include those where, for instance, "a grand jury witness . . . discusse[d] his role on the CBS Evening News," *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 155 (D.C. Cir. 2007), or an "attorney virtually proclaimed from the rooftops that his client had been subpoenaed to testify before the grand jury," *In re Motions of Dow Jones & Co.,* 142 F.3d 496, 505 (D.C. Cir. 1998).  Rule 6(e) therefore cannot justify redacting information that has already been placed in the public domain by, say, the SEC's disclosures about the investigative steps taken by the Government in this case.

Taking all of these points together, the private and law enforcement interests that might support secrecy in another matter are substantially undercut on the facts of this case.  Again, where warrant materials "stem[] from a publicly acknowledged investigation of widely known allegations of misconduct," any danger that "disclosure would raise new privacy and reputational concerns" is "significantly minimiz[ed]."  *In re WP II*, 201 F. Supp. 3d at 125.  So too here.

> D.  The purpose for which the Warrant Materials were introduced in this Court—to obtain authorization for an extraordinary search—strongly favors unsealing.

The final *Hubbard* factor considers "the purposes for which the documents were introduced during the judicial proceedings," *Nat'l Children's Ctr.*, 98 F.3d at 1409—in this case,

to obtain judicial authorization to seize and search the phone of a sitting United States Senator.
The Government claims, incredibly, that this factor "weighs in favor of continued sealing,"
Gov't Brief in Support of Continued Sealing at 14, when the D.C. Circuit already concluded the
opposite.  As its opinion explained, this factor "will 'oftentimes carry great weight' when 'a
sealed document is considered as part of judicial decisionmaking," and here "the hypothesized
search warrant materials . . . would have been considered as part of judicial decision-making."
*In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298 (quoting *CNN v. FBI*, 984 F.3d 114,
120 (D.C. Cir. 2021).[4]  Again, the D.C. Circuit's decision already resolves that this factor favors
Applicant, but in any event the same is true as a matter of common sense and first principles.

Obtaining a warrant is a serious step even in a mine-run case, because the process
"adjudicate[s] important constitutional rights."  *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90.
"[T]he information forming the basis for the probable cause determination" is the touchstone of
that process; it is the basis for allowing or refusing to allow the government to intrude on a
citizen's "substantive rights."  *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F.
Supp. 2d 577, 584 (S.D.N.Y. 2009).  For that reason, the presumption of access to that
information is "entitled to great weight."  *Id.*  But the role *these* Warrant Materials played in the
judicial process is weightier still; this search targeted a member of a coordinate branch, and such
searches raise unique separation-of-powers concerns.  *See Rayburn House Off. Bldg.*, 497 F.3d at

---

[4]     The Government's contrary reliance on *Hubbard* is misplaced.  The documents at issue in
*Hubbard* had been *seized* pursuant to a warrant—but they were never "expressly relied upon by
the trial judge" for any adjudicative purpose.  *Hubbard*, 650 F.2d at 321.  That is not true with
respect to the Warrant Materials at issue here, which "would have been intended to influence a
judicial decision to *issue* a search warrant" and on which the court necessarily relied in finding
probable cause to do so.  *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 297 (emphasis
added).  Again, if the Government disagrees with the D.C. Circuit's decision, it should have
sought further review; it cannot ask this Court to simply disregard it.

661.  In fact, the Department of Justice itself recently concluded that its policies on searches of members of Congress were inadequate, and the Attorney General promised a revision to "ensure that full weight is accorded to separation-of-powers concerns moving forward."  Charlie Savage, *Justice Dep't Will Toughen Rules for Seizing Lawmakers' Data, Garland Says*, N.Y. Times, https://perma.cc/3DCY-X6G4.  The Government cannot now claim that seeking authority from a court to conduct such a search is not a serious matter.  This factor too heavily favors unsealing.

## II.   The First Amendment right of access also requires further unsealing.

The First Amendment presumption of access also attaches to the Warrant Materials.  As the parties agree, that analysis looks to whether the complementary considerations of "experience and logic" support a constitutional presumption of access to a particular judicial proceeding or judicial record.  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986).  If so, "the presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* at 9–10 (citation omitted).  The Government's proposed redactions cannot survive that scrutiny.

### A.   Experience and logic favor access to search warrant materials.

Both experience and logic make clear that the public has a presumptive right to inspect search warrant materials.  As to experience, courts in this District have already explained that "routine historical practices countenance in favor of a qualified First Amendment right of access to warrant materials" because the typical course "is to make warrant materials publicly available after a search has been executed and a return is available."  *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88 & n.8; *accord In re WP I*, No. 16-mc-351, 2016 WL 1604976, at *2.  That warrant materials are judicial records presumptively open to the public at common law, *see In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 297, also supports finding that they are traditionally

public for purposes of the First Amendment presumption, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (noting that courts have "generally invoked the common law right of access to judicial documents in support of finding a history of openness"). Logic, too, favors access because of the role, described above, that access to warrant materials plays in checking the Executive and judiciary. *See In re N.Y. Times Co.*, 585 F. Supp. 2d at 83; *In re WP I*, No. 16-mc-351, 2016 WL 1604976, at *2; *In re Search Warrant*, 855 F.2d at 573.

The Government does not seriously dispute either claim as a general matter, but it resists the conclusion that necessarily follows by distinguishing "search warrant materials" as a general matter from "warrant materials from closed, uncharged cases," which it argues have not traditionally been accessible to the public. Gov't Brief in Support of Continued Sealing at 8. That claim is not, on its own terms, accurate: The expectation in this jurisdiction is that "when a matter is 'truly closed,' the government *will* assist in unsealing it." *In re Application for 2703(D) Order for Three Email Accounts*, 584 F. Supp. 3d 31, 33 (D.D.C. 2021) (quoting *In re Application of Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121, 1133 (D.C. Cir. 2020)). But the point is irrelevant, because the Government's proffered analysis confuses the question whether the First Amendment presumption of access applies to a particular kind of document with the question whether—and to what extent—the presumption might nevertheless be overcome on the facts of a given case.

The Supreme Court rejected just that sort of gamesmanship in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 597 (1982). There, Massachusetts attempted to evade the presumption of access to criminal trials by disputing the existence of a tradition of access to "the testimony of minor sex victims" in particular. *Id.* at 605 n.13. But the Court found that claim—accurate or not—"unavailing" because the presumption attaches to criminal trials "as a general matter." *Id.*

Whether that presumption is nevertheless overcome "in the context of any particular criminal trial, such as a murder trial . . . or a rape trial, depends not on the historical openness of that *type* of criminal trial but rather on the state interests assertedly supporting the restriction." *Id.* (emphasis added); *see also In re WP II*, 201 F. Supp. 3d at 122 (analyzing the reputational interests of uncharged third-parties as "compelling interests" that may justify closure).

The distinction between the two stages of the inquiry is not semantic:  "Resolving the level of generality affect[s] not only who [bears] the burden of persuasion but also the severity of that burden."  *Dhiab v. Trump*, 852 F.3d 1087, 1105 (D.C. Cir. 2017) (Williams, J., concurring in part and concurring in the judgment).  To prevent parties from attempting to define away their burden, then, the inquiry is tethered to the objective reality of the "particular part of the judicial process" at issue, rather than "information of the particular character involved" in any given case.  *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985).[5]  In short, "warrant materials from closed, uncharged cases," Gov't Brief in Support of Continued Sealing at 8, are "a subspecies" of warrant materials generally, not a legally distinct class of judicial records, *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 149–50 (1993) (per curiam).  Like all warrant materials, they are *presumptively* accessible to the public under the First Amendment; the status of the investigation can be weighed in judging whether—and to what extent—that presumption is nevertheless overcome as to specific warrant materials in a specific case, because

---

[5]       In the D.C. Circuit, the Government relied on language from *In re Reporters Committee for Freedom of the Press*, 773 F.3d 1325 (D.C. Cir. 1985), for the proposition that this jurisdiction departs from the conventional view and instead applies the First Amendment inquiry directly to "information of the sort at issue," *id.* at 1337.  In context, though, the next paragraph of that opinion makes clear that by "information of the sort at issue" the Circuit meant "depositions and discovery documents," each of which it analyzed—separately—by looking at each category's role in the judicial process.  *Id.* at 1337–38 (emphasis omitted).

law enforcement interests are "not at all diluted" by a case-by-case approach.  *United States v. Sealed Search Warrants*, 868 F.3d 385, 395–96 (5th Cir. 2017).

The Government's contrary approach, if adopted, would "create[] the potential for patchwork determinations of whether the First Amendment presumption applies to search warrant materials in the context of each individual case," with no limiting principle.  *Cohen*, 366 F. Supp. 3d at 631.  And it would introduce an arbitrary discrepancy, too, between the common law—which unquestionably looks to a document's role in the legal process to determine whether the presumption applies, *see In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 287—and the First Amendment presumption, whose scope the Government would have turn on an infinite and unpredictable set of case-by-case distinctions.  That approach, reverse-engineered to avoid the Government's burden in this case, has nothing to recommend it.  The First Amendment presumption attaches to search warrant materials.

B.    The Government's redactions are not narrowly tailored to a compelling interest.

Where, as here, the First Amendment presumption attaches, it provides "heightened protections" for public access relative to the common law.  *Wash. Post v. Robinson*, 935 F.2d 282, 288 n.8 (D.C. Cir. 1991).  The constitutional presumption can be "overridden, " if at all, only where "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protected the compelling interest." *Id.* at 290 (citation omitted).  Here, the Government's proposed redactions flunk each prong.  For the reasons discussed above, the Government's claimed privacy and law enforcement interests are not compelling in light of the volume of information that is already public.  And its redactions are not narrowly tailored to any interests it may be able to show, as this Court's previous

17

decisions make clear.  *See In re WP I*, No. 16-mc-351, 2016 WL 1604976, at \*3 (permitting the Government to redact from warrant materials in a closed investigation only "(1) the identities of uncharged third parties, (2) the identities and personal identifiers of any confidential informants, and (3) any personal identifying or contact information").  At base, to the extent the Government's proposed redactions cannot survive the common law analysis required under *Hubbard*—which they cannot—it follows *a fortiori* that they are not narrowly tailored to a compelling interest, as the First Amendment requires.

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests that the Government's motion for continued sealing be denied to the extent it proposes redactions inconsistent with the common law or First Amendment right of access, and that the Court order further unsealing of the Warrant Materials.

Date:   July 7, 2022

/s/ Katie Townsend
Katie Townsend
ktownsend@rcfp.org
D.C. Bar. No. 1026115
Grayson Clary
gclary@rcfp.org
D.C. Bar No. 1735810
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone:  (202) 795-9300
Facsimile:  (202) 795-9310

*Counsel for Applicant Los Angeles Times Communications LLC*