**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**IN RE APPLICATION OF LOS
ANGELES TIMES COMMUNICATIONS
LLC TO UNSEAL COURT RECORDS**

The Honorable Beryl A. Howell
Misc. Action No. 1:21-mc-00016

---

## REQUEST OF LOS ANGELES TIMES COMMUNICATIONS LLC
## FOR JUDICIAL NOTICE

Applicant Los Angeles Times Communications LLC respectfully requests that this Court

take judicial notice of the public filings in the matter of *Sec. & Exch. Comm'n v. Fauth*, No.

1:21-mc-00178 (S.D.N.Y. Oct. 20, 2021).  Those filings that are cited in Applicant's response

brief filed herewith are attached for the convenience of the Court.

As this Court and the D.C. Circuit have already recognized, the information disclosed in

those filings about the Government's investigations of Senator Burr and his brother-in-law,

Gerald Fauth, is essential to any analysis of Applicant's motion to unseal the judicial records at

issue in this case.  *See* Minute Order, *In re Application of Los Angeles Times Commc'ns LLC*,

No. 1:21-mc-00016 (D.D.C. May 19, 2022); *In re Los Angeles Times Commc'ns LLC*, 28 F.4th

292, 296 (D.C. Cir. 2022).  And there is no question that this Court may "take[] judicial notice of

court records from other cases," *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir.

2017), because the fact of their existence and their contents "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid.

201(b).  Applicant therefore respectfully requests that this Court take notice of the records.

Date:   July 7, 2022

/s/ Katie Townsend
Katie Townsend
ktownsend@rcfp.org
D.C. Bar. No. 1026115
Grayson Clary
gclary@rcfp.org
D.C. Bar No. 1735810
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone:  (202) 795-9300
Facsimile:  (202) 795-9310

*Counsel for Applicant Los Angeles Times Communications LLC*

ATTACHMENT

JUDGE CARTER

# 21 MISC 787

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION,            :
                                                                          :
                                              Applicant,           :       No.
        - against -                                                :
                                                                          :       ECF CASE
GERALD FAUTH,                                                 :
                                                                          :
                                              Respondent.      :
------------------------------------------------------------------ x

### MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF THE SECURITIES AND EXCHANGE COMMISSION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING GERALD FAUTH TO COMPLY WITH AN INVESTIGATIVE SUBPOENA

SECURITIES AND EXCHANGE
COMMISSION
Sanjay Wadhwa
Richard R. Best
Sheldon L. Pollock
John O. Enright
Nancy A. Brown
Tejal D. Shah
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1023 (Brown)
brownN@sec.gov

October 20, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

    A. The Commission's Ongoing Insider Trading Investigation ................................ 3

    B. The Commission's Investigative Subpoenas .................................................... 5

    C. Respondent's Counsel Cites His Failing Health to Excuse His Testimony ........ 6

    D. Fauth's Work as Chair of the National Mediation Board ................................. 8

ARGUMENT ....................................................................................................................... 9

    A. The Commission Is Conducting the Investigation Pursuant to a Legitimate
       Purpose ............................................................................................................ 10

    B. The Testimony the Commission Seeks Is Relevant to Its Investigation ............. 11

    C. The Commission Does Not Already Have the Information It Seeks ................... 11

    D. The Subpoena Was Properly Issued ................................................................. 12

    E. The Subpoena Creates No Unnecessary Burden .............................................. 12

CONCLUSION ..................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

Endicott Johnson Corp. v. Perkins,
317 U.S. 501 (1943)..........................................................................................11

RNR Enters., Inc. v. SEC,
122 F.3d 93 (2d Cir. 1997)...................................................................... 9-10, 12

SEC v. Arthur Young & Co.,
584 F.2d 1018 (D.C. Cir. 1978)........................................................... 10, 11

SEC v. Brigadoon Scotch Distrib. Co.,
480 F.2d 1047 (2d Cir. 1973)...............................................................10

SEC v. Finazzo,
543 F. Supp. 2d 224 (S.D.N.Y. 2008), aff'd, 360 F. App'x 169 (2d Cir. 2009)............10

SEC v. Jerry T. O'Brien, Inc.,
467 U.S. 735 (1984)....................................................................................9

United States v. Morton Salt Co.,
338 U.S. 632 (1950)...................................................................................10

United States v. Powell,
379 U.S. 48 (1964)..............................................................................10, 12

### <u>STATUTES AND RULES</u>

Securities Act of 1933

      Section 19(c), 15 U.S.C. § 77s(c) ..................................................5

Securities Exchange Act of 1934

      Section 21(b), 15 U.S.C. § 78u(b) ..................................................5

      Section 21(c), 15 U.S.C. § 78u(c)...................................................9

The Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in Support of Its Application for an Order to Show Cause and for an Order Requiring Gerald Fauth to Comply with an Investigative Subpoena (the "Application"). For the reasons discussed below and in the accompanying Declaration of Nancy A. Brown ("Brown Decl."), executed October 20, 2021, and the exhibits thereto, the Commission respectfully requests that the Court enter an order directing Gerald Fauth ("Respondent" or "Fauth") to comply with the investigative subpoena for testimony that the Commission has lawfully issued and served upon him.

## PRELIMINARY STATEMENT

The Commission seeks to enforce an investigative testimony subpoena it issued to Fauth in May 2020 (the "Subpoena"). In the nearly year and a half that has transpired since the Subpoena was issued, Respondent and his counsel have waged a relentless battle to avoid it, first by ignoring the Commission staff's numerous telephone calls, then by pleading Respondent's ill health and promising to offer dates for testimony at ever-shifting times in the future, and finally by refusing to explain how Fauth can maintain his current position at the helm of a federal agency but cannot sit for a limited session of testimony, by video-conference if he wishes and under any reasonable conditions necessary to accommodate his health issues.

Respondent's testimony is critical to the Commission's investigation. As detailed below, the Commission is investigating possible insider trading by Fauth's brother-in-law, Senator Richard M. Burr ("Senator Burr"), and Respondent's own sales of stock in the minutes after speaking with Senator Burr on the day the Senator sold the vast majority of his own portfolio. Whether Fauth was himself tipped with inside information from Senator Burr, and whether Fauth knew that Senator Burr was violating his duties under the STOCK Act by conveying that

information, are matters Fauth is uniquely positioned to speak to. Fauth should be compelled to appear for a limited testimony session, by remote means if need be and under any other reasonable conditions necessary to accommodate his health issues.

Since May 2020, Fauth's counsel has maintained that Fauth's ▮▮▮▮ health issues preclude him from sitting for a limited session of testimony.[1] But by counsel's own recent reports, Respondent's health has greatly improved over the last few months, and his condition has not impeded him from continuing his active role as Chair and one of three members of the National Mediation Board (the "NMB").[2] Nonetheless, counsel for Fauth flatly refuses even to discuss a date for his testimony notwithstanding the Commission's offer to make accommodations as necessary to make his appearance by video conference possible, including limiting the session to no more than three hours, spread over several days, with frequent breaks and the presence of medical professionals, if necessary.

To be sure, when the Commission first subpoenaed Respondent, it learned that he had received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But in the year and a half since, his counsel reports that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, Respondent has apparently recovered sufficiently to allow him to resume his daily responsibilities as Chair of the NMB, including his participation in regular telephonic meetings with both other Board members and

---

[1]     Concurrent with this Application, the Commission has filed a motion to redact references to Fauth's medical issues from the public record and to file unredacted versions of its papers and supporting exhibits under seal.

[2]     According to its website, https://nmb.gov/NMB_Application/index.php/mission-organization/, the NMB is an independent federal agency that "facilitates labor-management relations within the nation's railroad and airline industries," with a goal of, among other things, "avoiding interruption to commerce or to the operation of any carrier."

the agency's staff, and he has accepted President Biden's recent nomination to another three-year term as a Member of the NMB.

## STATEMENT OF FACTS

The Commission summarizes below the nature of its ongoing investigation, including the potential relevance of information held by Respondent.  It also summarizes its ongoing efforts to secure relevant testimony from Fauth in connection with its investigation of potential wrongdoing.

A.      The Commission's Ongoing Insider Trading Investigation

Fauth has information relevant to the Commission's ongoing insider trading investigation.  The Commission is investigating whether persons or entities have violated the federal securities laws' antifraud provisions, including by trading in securities on the basis of material nonpublic information in breach of a fiduciary or other duty arising out of a relationship of trust and confidence.  Among other things, the Commission is investigating whether, on February 13, 2020, Senator Burr sold stocks on the basis of material nonpublic information in violation of the federal securities laws, including the STOCK Act, a statute Congress passed in 2012 to prohibit its members from using nonpublic information derived from their positions for their personal benefit.  The Commission is also investigating whether Fauth sold securities that same day on the basis of material nonpublic information after Senator Burr had illegally tipped the material nonpublic information he possessed to Fauth.  Fauth is the brother of Senator Burr's wife, Brooke Burr.

On February 13, 2020, Senator Burr possessed material nonpublic information concerning Covid-19 and its potential impact on the U.S. and global economies, including but not limited to information learned through his position on the Senate Select Committee on

3

Intelligence; his position on the Senate Health, Education, Labor and Pensions Committee; and information learned from certain former staffers that were then directing key aspects of the U.S. Government's preparedness and response to the Covid-19 pandemic.

In February 2020, including on February 13, 2020, Senator Burr and Brooke Burr communicated regularly by phone with Fauth and his wife, Mary Fauth. In addition, during at least some part of early February, including the week of February 13, 2020, Senator Burr stayed at the Fauths' residence. On February 13, 2020, immediately after he spoke to Senator Burr on the phone, and immediately after Senator Burr had liquidated virtually all the stocks in his own portfolio, Fauth called his broker and directed the sales of several stocks in Mary Fauth's brokerage account. (Brown Decl. ¶ 8.)

More specifically, the timing of certain relevant phone calls and events on February 13, 2020, was as follows:

- 8:54 a.m.[3] — Senator Burr placed a call from his cellphone to his broker's landline at Broker-Dealer 1 and directed his broker to sell $1,652,866 worth of stock—all but one of the equities in his and his wife's joint individual retirement account ("IRA") portfolio.[4] The call lasted 12 minutes and 52 seconds.

- 11:07 a.m. —Fauth placed a call from his cellphone to his sister Brooke Burr's cellphone. The call lasted 2 minutes and 36 seconds.

- 11:32 a.m. — Senator Burr placed a call from his cellphone to Fauth's cellphone. The call lasted 50 seconds.

- 11:33 a.m. — Fauth placed a call from his cellphone to his primary broker's landline at Broker-Dealer 2 and was told by an employee who answered the call that his primary broker was out of the office.[5] The call lasted 1 minute and 6 seconds.

---

[3] All times are in Eastern Standard Time.

[4] Broker-Dealer 1 is a broker-dealer registered with the Commission.

[5] Broker-Dealer 2 is a broker-dealer registered with the Commission.

4

- <u>11:35 a.m.</u> — Fauth then placed a call from his cellphone to another broker's landline at Broker-Dealer 2 and directed her to sell several stocks in his wife's account. The call lasted 24 minutes.

- <u>11:38 a.m.</u> — Per Senator Burr's instructions, his broker at Broker-Dealer 1 entered trades to sell equities in his joint IRA account with his wife.

- <u>4:34 p.m.</u> — After the market had closed that day, Senator Burr logged in to his online brokerage account using an IP address assigned to an account registered to Mary Fauth in her Alexandria, Virginia home.

(Brown Decl. ¶ 9.) The Commission staff is investigating, among other things, whether the trades Fauth placed in the account his wife held at Broker-Dealer 2 were made on the basis of material nonpublic information he learned from Senator Burr.

B.   The Commission's Investigative Subpoenas

On March 25, 2020, the Commission issued a formal order of investigation ("Formal Order") in an investigation titled "Certain Issuers Related to Covid 19 (TISO) (NY-10215)." (Brown Decl. ¶ 5.)[6] Among other things, the Formal Order designated, pursuant to Section 19(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77s(c)] and Section 21(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78u(b)], certain Commission staff members as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records deemed relevant or material to the investigation. (<u>Id.</u>)

The Commission, through its designated staff, first issued document subpoenas to Respondent and his wife on May 12, 2020. Prior to sending them directly to the Fauths, the Commission left numerous voicemail messages for Fauth's counsel, understanding that he had

---

[6]   The Commission's Formal Order is nonpublic. The Formal Order was supplemented in July 2021 to add staff designated as officers of the Commission. (Brown Decl. ¶ 5.)

been engaged to represent the Fauths in the Commission's investigation as well as a parallel investigation then being conducted by the Department of Justice ("DOJ"). Counsel did not return any of the Commission's messages. (Brown Decl. ¶¶ 11-12.)

When neither of the Fauths responded to the document subpoenas by the return date, the Commission staff called their home number to discuss when or whether they intended to comply and left a message. Within minutes, counsel called a member of the Commission staff to announce his firm's representation of the Fauths and to direct all further communication between the Commission and the Fauths through counsel. (Brown Decl. ¶¶ 13-15.)

On May 26, 2020, the Commission served the Subpoena for testimony on Fauth's counsel. (Brown Decl. ¶ 16 and Ex. A.) Respondent's counsel offered to do an attorney proffer in lieu of Fauth's testimony. The Commission agreed to hear the attorney proffer but reserved the right to request Respondent's testimony thereafter. On June 18, 2020, Respondent's counsel made a presentation to the Commission staff, including on the status of Fauth's various health concerns that, in counsel's view, made his ability to sit for testimony untenable. Following the presentation, the Commission staff told Respondent's counsel that they remained interested in taking Fauth's testimony. Respondent's counsel promised to discuss the request with their client and revert. Thereafter, on November 17, 2020, in response to an inquiry from a DOJ prosecutor conducting the parallel criminal investigation, Respondent's counsel again raised Respondent's serious health issues as the reason he could not sit for testimony. (Id. ¶¶ 17-20.)

C.    Respondent's Counsel Cites His Failing Health to Excuse His Testimony.

Thereafter, in a series of communications that continued through yesterday, October 19, 2021, Respondent's counsel has refused to either provide a date for Fauth's testimony or to

discuss what accommodations might make a limited testimony session possible. (Brown Decl. ¶¶ 21-36, and Exs. C, D, E, F, H, I, K and M.)

After repeated requests for documentation from one of Fauth's medical providers, Respondent's counsel finally furnished a letter from his primary care physician ("Respondent's Physician"), dated May 25, 2021. In that letter (Brown Decl., Ex. F), Respondent's Physician reported that Fauth had received ██████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████ He also noted that Respondent had ████████████████████████ ████████████████████████ Respondent's Physician reported that Respondent should avoid stressful situations until (1) "He has completed and has had time to completely and fully recovered [sic] from his ongoing . . . ██████████████"; and (2) "He has had the opportunity to be fully evaluated by [doctors] next month." Respondent's Physician defined "stressful situations" to include "providing testimony before a court, Congress or regulatory agency." (Brown Decl., Ex. F, Respondent's Physician's May 25, 2021 Letter, at 2.)

But Respondent's Physician also made clear that Respondent "may be able to resume and participate in some . . . stressful situations" should his ████████████████████████ ███████████: "[H]opefully it will be determined that Mr. Fauth's ████████████████ ████████████████████████████████████████████████████████ ███████████████████████████. If so, Mr. Fauth may be able to resume and participate in some strenuous activities and stressful situations later this summer." (Brown Decl., Ex. F, Respondent's Physician's May 25, 2021 Letter, at 2.)[7]

---

[7]    Respondent's counsel had previously undertaken to discuss a date for Respondent's testimony after Respondent had completed ████████████. (Brown Decl., Ex. E (Counsel's May 17, 2021 Letter to the Staff).)

7

Indeed, Fauth's treatments—████████████████████████—do appear to have been

effective. As his counsel's September 29, 2021 Letter revealed, Fauth ██████████████████

██████████████████████████████. (Brown Decl., Ex. K.) And, as

described below, it appears that Fauth has resumed participation in some stressful situations

stemming from his position at the NMB.

D.     Fauth's Work as Chair of the National Mediation Board

At the same time that Respondent's counsel maintains that Fauth is physically incapable

of testifying remotely for even two to three hours, Fauth continues to act as the Chair of the

three-member NMB—a position he assumed this past summer in July 2021. (Brown Decl., Exs.

N and Q.) According to the NMB's acting general counsel, Fauth has been regularly carrying

out his duties—and earning a salary as a federal employee—for at least the last three months,

participating in regular telephonic executive sessions and department directors' meetings.

(Brown Decl., Ex. P (Letter dated October 13, 2021, from Maria-Kate Dowling, NMB Acting

General Counsel ("Dowling Letter").) In addition, according to the NMB's website, Fauth has

participated in the nearly 20 representational determinations—decisions made by the NMB on

petitions for and challenges to bargaining representation for railway and airline carrier

employees—made by the NMB in fiscal year 2021. (Brown Decl., Ex. O.)

In July 2021, Fauth was nominated to a new three-year term as a Member of the NMB.

(Brown Decl., Ex. R.) For purposes of that nomination, Fauth appeared last month with the

NMB's general counsel for an interview by the minority staffers of the Senate's Health,

Education, Labor and Pensions ("HELP") Committee in connection with the Senate's role in

confirming the president's nominees, and he responded to that Committee's questions. (Brown

Decl., Ex. P (Dowling Letter).) When he appeared for that interview, Fauth does not appear to

have followed Respondent Physician's advice that he avoid "stressful situations," including

"providing testimony before a court, Congress or regulatory agency." (Brown Decl., Ex. F,

Respondent's Physician's May 25, 2021 Letter, at 2.)[8]

    In numerous communications with Respondent's counsel over the nearly year and a half

that the Subpoena has been outstanding, the staff has repeatedly requested that Respondent's

counsel provide a list of accommodations that would allow Fauth to appear for testimony,

including most recently on October 7, 2021. (Brown Decl., Ex. L.) Respondent's counsel has

not responded.

## ARGUMENT

    The Commission properly issued and served the Subpoena on Fauth to investigate

potential insider trading by Senator Burr, Brooke Burr, and/or the Fauths. The Court should

order Fauth to comply with the Subpoena.

    The Commission has "broad authority to conduct investigations into possible violations

of the federal securities laws and to demand the production of evidence relevant to such

investigations." SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 741 (1984). Section 21(c) of the

Exchange Act authorizes the Commission to seek an order from this Court compelling

Respondent to comply with the Subpoena.[9] See 15 U.S.C. § 78u(c); Jerry T. O'Brien, 467 at 741

n. 9.

    "The courts' role in a proceeding to enforce an administrative subpoena is extremely

limited." RNR Enters., Inc. v. SEC, 122 F.3d 93, 96 (2d Cir. 1997) (affirming order directing

---

[8]    Respondent's counsel told the Commission staff that Fauth's activities as Chair of the NMB were much more limited, albeit seemingly stressful. According to those representations, Fauth has only involved himself in "crisis issues" at the NMB. (Brown Decl. ¶ 26.)

[9]    Venue properly lies in the Southern District of New York because this District is "the jurisdiction [in] which [the] investigation . . . is carried on." 15 U.S.C. § 78u(c).

compliance with Commission subpoenas) (citation omitted).  The Court should enforce the

Subpoena if the information sought is "within the authority of the agency, the demand is not too

indefinite and the information sought is reasonably relevant."  United States v. Morton Salt Co.,

338 U.S. 632, 652 (1950).

To obtain an order enforcing the Subpoena, the Commission must demonstrate that it

meets four requirements:

> "[1] that the investigation will be conducted pursuant to a
> legitimate purpose, [2] that the inquiry may be relevant to the
> purpose, [3] that the information sought is not already within the
> Commission['s] possession, and [4] that the administrative steps
> required . . . have been followed."

RNR Enters., Inc., 122 F.3d at 96-97 (quoting United States v. Powell, 379 U.S. 48, 57-58

(1964)).  "An affidavit from a governmental official is sufficient to establish a prima facie

showing that these requirements have been met."  Id. at 97 (citation omitted).  Once the

Commission has made a prima facie showing, Respondent can defeat the enforcement of the

Subpoena only by demonstrating that the Subpoena is "unreasonabl[e] or was issued in bad faith

or for an improper purpose or that compliance would be unnecessarily burdensome."  Id.

(quoting SEC v. Brigadoon Scotch Distrib. Co., 480 F.2d 1047, 1056 (2d Cir. 1973)) (internal

quotation marks omitted and brackets and emphasis in original).  The Commission satisfies each

of the four requirements for enforcement of the Subpoena.

### A.     The Commission Is Conducting the Investigation Pursuant to a Legitimate Purpose.

A Commission investigation of possible violations of the federal securities laws satisfies

the legitimate purposes requirement.  See RNR Enters., Inc., 122 F.3d at 97; SEC v. Finazzo, 543

F. Supp. 2d 224, 227 (S.D.N.Y. 2008), aff'd, 360 F. App'x 169 (2d Cir. 2009); see also SEC v.

Arthur Young & Co., 584 F.2d 1018, 1024 (D.C. Cir. 1978).  As discussed above, the

investigation concerns potential securities fraud violations by uncharged individuals, including the Fauths and Senator Burr, an area of paramount concern to the Commission given its statutory responsibilities to enforce the securities laws.  See Arthur Young, 584 F.2d at 1024 (holding that investigation "into possible infringements of the securities laws or implementing regulations" are "areas of legitimate concern to the Commission in the discharge of its statutory responsibilities").

### B.       The Testimony the Commission Seeks Is Relevant to Its Investigation.

To satisfy the relevance requirement, the Commission need only show that the information sought is "not [p]lainly incompetent or irrelevant to any lawful purpose." Arthur Young & Co., 584 F.2d at 1029 (quoting Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943)).  In making that determination, the Court "defers to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." NLRB v. Am. Medical Response Inc., 438 F.3d 188, 193 (2d Cir. 2006) (internal quotations omitted).

Here, the Commission's Subpoena unquestionably falls within the scope of its lawful inquiry into potential securities law violations.  Among other things, the Commission seeks to determine what, if any, material nonpublic information Senator Burr shared with the Fauths that might have prompted Gerald Fauth to direct his broker to sell stocks in Mary Fauth's account on February 13, 2020, only one minute after he spoke to Senator Burr.

### C.       The Commission Does Not Already Have the Information It Seeks.

Respondent is uniquely positioned to provide information concerning Senator Burr, the information the Senator possessed that he may have shared with Fauth, and Fauth's own securities trading.  That information includes the contents of conversations Senator Burr had with Fauth in the days and minutes preceding Respondent's trades on February 13, 2020, and any

11

explanations he might offer for his trades independent of the information that Senator Burr might have shared.

**D.      The Subpoena Was Properly Issued.**

The Subpoena was issued in accordance with "'the administrative steps required.'"" RNR Enters., Inc., 122 F.3d at 96 (quoting Powell, 379 U.S. at 57-58).  The Commission both issued and properly served the Subpoena.  The Subpoena was issued by a Commission staff member authorized by the Formal Order to require testimony in the investigation.  (Brown Decl. ¶ 16.)  It was served by email on Respondent's counsel, who insisted that all communications with his client be through him, who acknowledged receipt of the Subpoena, and who never objected to its service by email.  (Brown Decl. ¶¶ 15-17.)

Because the Commission has met each of the four requirements for enforcement of the investigative Subpoena, the Court should require Respondent to comply with its demands to appear for testimony.

**E.      The Subpoena Creates No Unnecessary Burden.**

Respondent cannot show that the Subpoena creates an unnecessary burden, as he must to defeat the Subpoena's enforcement.  RNR Enters., Inc., 122 F.3d at 96-97.  As his own counsel admits, Respondent's medical condition has improved over the months he has resisted appearing for testimony.  (Brown Decl., Ex. K.)[10]  The Commission's offer of a limited remote session, complete with whatever reasonable accommodations Respondent's medical team advises, should allow Respondent to testify without unnecessary burden.

This is so particularly because Respondent has been fulfilling the responsibilities of his

---

[10]      The Commission waited to seek the relief it does here until Fauth's ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ had concluded.

full-time job as Chair of the NMB.  As described above, Fauth regularly attends to his daily duties and responsibilities as Chair of the NMB.  And if Respondent's Physician counseled Respondent to avoid "stressful situations," as his Physician reported in his May 25, 2021 Letter (Brown Decl., Ex. F), Fauth has either received his doctors' permission to resume such activities or has ignored that advice.  According to his lawyers' representations, Fauth has devoted himself to NMB's "crisis issues."  (Brown Decl. ¶ 26.)  Indeed, Respondent's appearance to answer questions from the minority staff of the Senate's HELP Committee (Brown Decl., Ex. P (Dowling Letter)) seems to depart from his Physician's advice that he not "provide testimony before a court, Congress or regulatory agency."  (Brown Decl., Ex. F.)

**CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court order

Respondent to show cause why he should not comply with the Subpoena and order him to

comply.

Dated: October 20, 2021
      New York, New York

                              SECURITIES AND EXCHANGE COMMISSION

                              By:                         
                                      Sanjay Wadhwa
                                      Richard R. Best
                                      Sheldon L. Pollock
                                      John O. Enright
                                      Nancy A. Brown
                                      Tejal D. Shah

                                      Attorneys for the Applicant
                                      Securities and Exchange Commission
                                      New York Regional Office
                                      200 Vesey Street, Suite 400
                                      New York, New York 10281-1022
                                      (212) 336-1023 (Brown)
                                      brownn@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                  :

**SECURITIES AND EXCHANGE**      :
**COMMISSION,**                   :   **Case No. 21-mc-787 (ALC)**

           Applicant,      :

   -against-               :   **ECF CASE**

**GERALD FAUTH**,             :

           Respondent.   :

-----------------------------------------------------------x

## DECLARATION OF F. JOSEPH WARIN

I, F. Joseph Warin, declare as follows:

1.    I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, in Washington, D.C., and I am counsel for Gerald Fauth in the above-captioned action.

2.    I have personal knowledge of the facts stated herein, and, if called to testify, I could and would competently testify to these facts.

3.    I was retained by Mr. Fauth and his wife, Mary Fauth, to respond to a subpoena that he received from the U.S. Securities and Exchange Commission ("SEC") dated April 24, 2020, a subpoena from the United States Attorney's Office for the District of Columbia dated April 17, 2020, and a testimonial subpoena from the SEC on May 26, 2020 (collectively, the "Subpoenas").

4.    In response to the Subpoenas, I delivered a detailed attorney proffer on

behalf of Mr. and Mrs. Fauth on June 18, 2020, lasting approximately 90 minutes, to the SEC, the Department of Justice ("DOJ"), the Federal Bureau of Investigation, and the United States Attorney's Office for the District of Columbia.  Specifically, Nancy Brown, Tejah Shah, John Enright, and Sheldon Pollock all attended the proffer session on behalf of the SEC.

5.      The detailed attorney proffer, among other topics, covered various documents produced by Mr. and Mrs. Fauth, including those collected from the Fauths' email accounts and mobile telephones; Mr. Fauth's recollections of the events in early February 2020 to which the SEC refers in its Application of October 20, 2021; additional context and reasons for his trading activity; Mr. Fauth's professional background and expertise in transportation matters; and general background regarding the Fauths, including their familial relationship with Senator Richard Burr.

6.      ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

7.      No SEC attorney asked any question during the course of the attorney proffer.  Shortly after the proffer, on June 25, 2020, I had a brief teleconference with SEC attorneys Tejal Shah and John Enright that included discussion of Mr. and Mrs.

2

Fauth's possible deposition testimony.

8.      I did not hear from the government again until September 11, 2020.  On that date, I received email correspondence from James C. Mann, a trial attorney in the Public Integrity Section of DOJ's Criminal Division regarding the potential testimony of Mr. Fauth.  *See* Exhibit 1.  SEC attorney Tejal Shah was copied on that email.  *Id*. I then spoke to attorneys from DOJ and the SEC on September 15, 2020, and after that conversation ██████████████████████████████████████████████ ████████████████████████████████████████████ Exhibit 2.  In that correspondence, I also offered the following: "[o]ur client is willing to answer questions in writing if that would assist your inquiries."  *Id*.  I did not receive any response from the SEC to our offer to answer questions in writing.

9.      In response to emails from DOJ, copying an SEC attorney, I sent additional letters to DOJ, copying an SEC attorney, in October and November 2020, to ████████████████████████████████ and to reiterate our offer to answer questions in writing.  Exhibits 3 and 4.

10.     On January 19, 2021, the New York Times reported that "[t]he Justice Department informed Senator Richard M. Burr, Republican of North Carolina, on Tuesday that it would not pursue insider trading charges against him" and that the criminal investigation into Senator Burr's alleged trading activity had closed. Exhibit 5.  I, along with my colleague, Edward Patterson, then spoke to the DOJ

prosecutors regarding the criminal investigation of Mr. Fauth on January 26, 2021. The prosecutors confirmed that the criminal investigation was closed, and I sent a letter to the prosecutors memorializing that conversation on January 27, 2021. Exhibit 6.

11.    After I had confirmed that the criminal investigation of Mr. Fauth had been closed in January 2021, I did not hear from the SEC until March 12, 2021, when Ms. Shah asked for a telephone conference.   Exhibit 7.   This is the first direct communication I had received from the SEC that did not include DOJ since I spoke to Ms. Shah and Mr. Enright on June 25, 2020.   On March 18, 2021, I spoke with Ms. Shah, as well as Ms. Brown, regarding the possibility of Mr. Fauth providing testimony.

12.   ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████   Exhibit 1 to the Herrera Decl.  I also repeated Mr. Fauth's offer to provide additional information and/or written answers to interrogatories or other similar written questions.  These communications are reflected in my correspondence to the SEC dated March 26, 2021, May 17, 2021, and September 29, 2021.  *See,* Exhibit 8; s*ee also* Exhibits E and K to the Brown Decl.

4

13. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ and I again offered to provide written

answers to questions. *See* Exhibit K to the Brown Decl.

14. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████ and reiterated the offers in my

September 29 letter. *See* Exhibit M to the Brown Decl.

15. At no point following my detailed proffer in June 2020 have I received

any factual questions or requests for additional information from the SEC relevant to

its investigation, despite my repeated offers to address any questions the SEC may

have in writing. ████████████████████████████████████

████████████████████████████████████

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of October, 2021, in Washington, DC.


_____

F. Joseph Warin

5