**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE APPLICATION OF LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS | Miscellaneous Action No. 21-16 (BAH) Chief Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In May 2021, this Court denied Los Angeles Times Communications LLC's ("petitioner" or "L.A. Times") application to unseal court records pertaining to what was then a hypothetical search warrant—the existence of which the U.S. Department of Justice ("DOJ") had declined publicly to confirm—that allegedly had been executed on then-U.S. Senator Richard Burr's cellphone a year earlier in connection with an insider-trading investigation. *See In re L.A. Times Commc'ns LLC*, No. 21-mc-16 (BAH), 2021 WL 2143551, at *1 (D.D.C. May 26, 2021). The D.C. Circuit reversed the denial of petitioner's application and remanded with instructions to reconsider whether, given new public disclosures by another government agency about the investigation after this Court's decision had issued and "Senator Burr's public acknowledgment of the Justice Department's investigation," unsealing of the *still*-hypothetical search warrant materials would be appropriate under the common law right of access to judicial records. *See In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 295 (D.C. Cir. 2022).

On remand, in response to this Court's order, *see* Min. Order (May 19, 2022), DOJ publicly acknowledged, for the first time in over a year of litigation, that the search warrant sought by petitioner in fact existed, Notice in Resp. to Ct.'s May 19, 2022 Min. Order, ECF No. 24, and filed on the public docket a highly redacted version of the search warrant as well as associated submissions, s*ee* Gov't's Mot. & Mem. Supp. Continued Sealing of Certain Parts of

1

Search Warrant Materials ("Gov't Mot."), ECF No. 25; Sealed Document filed by Gov't in Resp. to Order of the Ct., Revised Redacted Search Warrant Materials, ECF No. 34-1. Following additional back-and-forth with DOJ, now pending before the Court is DOJ's motion to preserve under seal redacted portions of the search warrant and related court records in this closed investigation that resulted in no prosecution of former Senator Burr, *see generally* Gov't Mot., while petitioner wants all redacted information disclosed.

For the reasons explained below, the government's motion is granted in part and denied in part.

## I.       BACKGROUND

On May 13, 2020, the government presented, and this Court granted under seal, a warrant to search the cellphone of Senator Burr as part of a now closed investigation into allegations of insider training and securities fraud, in violation of 15 U.S.C. § 78j(b) and 18 U.S.C. § 1348, respectively. *See* Gov't Mot., Ex. A, Redacted Search Warrant Materials. The government "sought to determine whether Senator Burr sold or purchased stock based on non-public information relating to the COVID-19 pandemic that he received by virtue of his position as a United States Senator, in violation of the Stop Trading on Congressional Knowledge Act" ("STOCK Act"), codified at 15 U.S.C. §§ 78j(b), 78u-1(g). Gov't Mot. at 2.

Later the same day that the warrant issued under seal, the L.A. Times published a story reporting "that Senator Burr had been served with a search warrant and that his cellphone had been seized in connection with an alleged investigation by the Justice Department into his stock trades." *In re L.A. Times Commc'ns LLC*, 28 F.4th at 295; *see also* Del Quentin Wilber & Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. TIMES (May 13, 2020), http://lat.ms/2N0cTNh. The D.C. Circuit described the factual context for the warrant as follows, citing a news report:

> On February 13, 2020, Senator Richard Burr and his wife sold stocks valued between $628,000 and $1.72 million, as disclosed in mandatory Senate filings. Soon after, the stock market fell sharply as news about the COVID-19 pandemic spread. Because, shortly before those sales, Senator Burr had received briefings on the pandemic in his capacity as a Senator and member of the Senate Committee on Health, Education, Labor and Pensions, the February 13 trades quickly garnered media scrutiny and public attention. *See, e.g.*, Eric Lipton & Nicholas Fandos, *Senator Richard Burr Sold a Fortune in Stocks as G.O.P. Played Down Coronavirus Threat*, N.Y. TIMES (Mar. 19, 2020), https://www.nytimes.com/2020/03/19/us/politics/richard-burr-stocks-sold-coronavirus.html.

*In re L.A. Times Commc'ns LLC*, 28 F.4th at 295. The D.C. Circuit noted that, in January 2021, Senator Burr issued a statement announcing the conclusion of DOJ's investigation into his stock transactions, again citing a report by a news outlet. *Id.* (citing Vanessa Romo, *DOJ Drops Insider Trading Investigation Into Sen. Richard Burr*, NPR (Jan. 19, 2021), https://www.npr.org/2021/01/19/958622574/doj-drops-insider-trading-investigation-into-sen-richard-burr ("NPR Report")). According to that cited NPR Report, Senator Burr's statement consisted of the following: "Tonight, the Department of Justice informed me that it has concluded its review of my personal financial transactions conducted early last year. The case is now closed." NPR Report.

Nine months after the warrant issued under seal, petitioner asked this Court, on February 24, 2021, to unseal any court records pertaining to the search warrant executed on Senator Burr's cellphone, asserting a right of access to any such records under both the common law and First Amendment. Pet'r's Mot. to Unseal Court Records, ECF No. 1.[1] Specifically, petitioner sought disclosure of "all materials associated with the search warrant, including the search warrant application, supporting affidavits, the search warrant itself, the return, the docket sheet, and any

---

[1]     This petition was filed pursuant to this Court's Local Criminal Rule 57.6, authorizing "[a]ny news organization" seeking "relief relating to a criminal investigative or grand jury matter, [to] file an application for such relief with the Court." D.D.C. LCRR 57.6. When such application "pertains to a criminal investigative or grand jury matter to which no judge has been assigned," the matter is "referred by the Clerk to the Chief Judge for determination," *id.*, and, in accordance with this rule, this matter was reassigned to the undersigned Chief Judge on May 11, 2021, *see* Notice of Reassignment, ECF No. 15.

other judicial records connected to the search warrant served on Senator Burr" (collectively, "search warrant materials").  *In re L.A. Times Commc'ns LLC*, 2021 WL 2143551, at *1 (internal citations omitted).  Petitioner also subsequently moved to unseal the government's *ex parte* and sealed opposition to its motion for disclosure.  Pet'r's Mot. to Unseal Sealed Mot. for Leave to File Doc. Under Seal, ECF No. 11.

In the ensuing litigation before this Court and the D.C. Circuit—until remand—DOJ *never* publicly recognized the existence of either the search warrant materials or any DOJ investigation into Senator Burr.  *See* Gov't's Mot. at 3 (explaining that when L.A. Times commenced litigation for public disclosure of search warrant materials, the government "had not publicly acknowledged that it had conducted an investigation regarding Senator Burr, and certainly had not confirmed the existence of the" search warrant materials); *In re L.A. Times Commc'ns LLC*, 2021 WL 2143551, at * 1 ("The United States Department of Justice has never acknowledged the existence of an investigation into Senator Burr.").  That posture thus required this Court to treat the existence of the search warrant materials as little more than speculation by a media organization.  This posture necessarily hampered public and detailed consideration of whether the hypothetical search warrant petitioner posited should be unsealed and, if so, to what extent.  Nonetheless, this Court "assum[ed] the existence of the requested search warrant materials" to resolve petitioner's claim.  *Id*. at *5.

On May 26, 2021, petitioner's motions to unseal the search warrant materials and related court records were denied based on the conclusion that, "[a]ssuming . . . the requested materials exist, and that the qualified public right of access attaches, no disclosure of search warrant materials would be appropriate in a closed, non-public investigation that has not resulted in criminal charges, and where individual privacy and governmental interests may be implicated." *Id.* at *3.

On appeal, DOJ continued to decline to acknowledge the existence of the search warrant materials, requiring the Circuit likewise to review petitioner's request for unsealing as one for "hypothesized search warrant materials." *In re L.A. Times Commc'ns LLC*, 28 F.4th at 297.  In the intervening months between this Court's denial, in May 2021, of petitioner's unsealing requests, and appellate review, "the Securities and Exchange Commission ('SEC') filed an enforcement action in the U.S. District Court for the Southern District of New York for a subpoena issued to Senator Burr's brother-in-law, Gerald Fauth," disclosing in public filings "that [the SEC] was investigating stock trades by Senator Burr and Mr. Fauth, and that its investigation paralleled an investigation by the Justice Department."  *Id.* at 296.  On March 18, 2022, given "the public disclosures in [that] SEC investigation, the Senator's public acknowledgment of the Justice Department investigation, and this court's precedent governing the application of the *Hubbard* test," *id.* at 298, the Circuit remanded this case with instructions that this Court "reconsider its common law analysis."  *Id.* at 295.  The Circuit also cited "[a] separate declaration by Fauth's counsel [that] recounted a conversation in which Justice Department prosecutors stated that the criminal investigation of Fauth was closed.  Decl. of F. Joseph Warin (counsel for Gerald Fauth), *SEC v. Fauth*, No. 1:21-mc-00787, at 3–4 (S.D.N.Y. Oct. 27, 2021)."  *Id*. at 296.

Upon issuance of the Circuit's mandate on May 10, 2022, *see* Mandate of U.S. Court of Appeals, ECF No. 20, the parties submitted a joint status report proposing a schedule for remand proceedings in this matter, which implied—for the first time in over a year of litigation—that DOJ now publicly acknowledged the existence of both the search warrant materials and the Justice Department's investigation into Senator Burr.  *See, e.g.*, May 18, 2022 Joint Status Report at 3, ECF No. 23 (noting "Petitioner's position that the Government should be required to submit to the Court . . . its proposed redactions to the Materials").  DOJ was directed to confirm

5

whether this was in fact an acknowledgement of the existence of the search warrant materials for purposes of remand, thereby "put[ting] this matter in a different posture."  Min. Order (May 19, 2022).  In response, on May 24, 2022, DOJ notified the Court that it "now acknowledges the existence of the Materials, for reasons that include the public recognition of the Government's investigation by other individuals and entities."  Gov't's Resp. to Ct.'s Min. Order ("Gov't's May 24, 2022 Resp."), ECF No. 24.  A scheduling order to govern remand proceedings was subsequently entered directing DOJ to file, "on the public docket," a public version of the search warrant materials concerning Senator Burr that were now acknowledged to exist, "along with any brief addressing why" any portions of those materials should remain under seal.  Min. Order (May 27, 2022).

DOJ then submitted, on the public docket, proposed redacted copies of the search warrant materials sought by petitioner—including the warrant application, search warrant, supporting affidavit, and docket sheet, Gov't's Mot., Ex. A, Redacted Search Warrant Materials—and later, at the Court's direction, *see* Min. Order (July 30, 2022), a motion and accompanying memorandum supporting continued sealing of the redacted portions of the search warrant materials, Gov't's Supp. Mem. Pursuant to Court's Min. Order ("Gov't's Supp. Mem.") at 2, ECF No. 29.  On August 12, 2022, the Court directed DOJ "to specify in detail" why redacted portions of the search warrant materials required continued sealing in light of the SEC disclosures, the D.C. Circuit's remand instructions, and Circuit law permitting disclosure of information "coincidentally before the grand jury" that does not "elucidate" the grand jury's "inner workings."  Min. Order (Aug. 12, 2022) (citing *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)).

DOJ responded by reducing the extent of its proposed redactions of the search warrant materials, *see* Gov't's Resp. to Order of the Ct., ECF No. 31 (explanation of redactions);

Proposed Redactions, ECF No. 32, but those revised redactions continued to raise questions about compliance with the Circuit's mandate.  Consequently, the Court held an *ex parte* and sealed proceeding with the government on August 19, 2022, in which it conducted a line-by-line review of DOJ's proposed redactions to elicit an explanation as to how each proposal either met the Circuit's mandate or fell short.  The result of that proceeding is the government's latest response to the August 12 Order, *see* Gov't's Add'l Supplement in Resp. to Order of the Ct., ECF No. 33, with renewed, but substantially fewer, redactions than previously submitted, Gov't's Revised Redacted Search Warrant Materials, ECF No. 34-1.  Petitioner opposes DOJ's request for continued sealing of portions of the search warrant materials. Pet'r's Opp'n to Continued Sealing ("Pet'r's Opp'n") at 18, ECF No. 26.[2]   DOJ's motion for continued partial sealing is now ripe for review.

## II.   LEGAL STANDARD

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment."  *In the Matter of the Application of WP Co. LLC* (*"Application of WP"*), 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 (D.D.C. 2013)).  As in the Court's prior decision, each of these potential avenues for unsealing of the search warrant materials are addressed in turn.

### A.  Common Law Right of Access

While "there is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records," *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (Garland, J.) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)), "not all

---

[2]      Petitioner also moves the Court to take judicial notice of public filings in *SEC v. Fauth*, 21-mc-178 (S.D.N.Y.), an enforcement action commenced by the SEC in the Southern District of New York against Gerald Fauth, Senator Burr's brother-in-law, in which action the SEC disclosed that Senator Burr had been subject to a parallel investigation by DOJ regarding his stock trades.  Pet'r's Req. for Judicial Notice, ECF No. 27.  The government does not oppose this request, *see generally* Gov't's Reply to Pet'r's Opp'n ("Gov't's Reply"), ECF No. 28, and petitioner's motion for judicial notice is accordingly granted.

documents filed with courts are judicial records" subject to this presumption, *id.* at 1128 (quoting

*SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)); *see also Am. Int'l Grp.*, 712 F.3d at 4

(finding consultant reports were not judicial records because district court "made no decisions

about them or . . . otherwise relied on them"); *United States v. El-Sayegh*, 131 F.3d 158, 163

(D.C. Cir. 1997) (finding plea agreement that played no role in any adjudicatory function was not

judicial record). Instead, "whether something is a judicial record depends on the role it plays in

the adjudicatory process." *Leopold*, 964 F.3d at 1128 (internal citation omitted). Documents and

other materials filed in court "intended to influence the court" are judicial records. *Id.*

Even where documents qualify as judicial records, the common law "right to inspect and

copy judicial records is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598

(1978), and "may be outweighed by competing interests," *Leopold,* 964 F.3d at 1127. The

Supreme Court has instructed, "the decision as to access is one best left to the sound discretion of

the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the

particular case." *Nixon*, 435 U.S. at 599. In this Circuit, the competing interests that may

overcome the presumption favoring public access to judicial records have been "crafted [] into a

six-factor test" originating in *Hubbard*. *Leopold*, 964 F.3d at 1127. The *Hubbard* six-factor test

"has consistently served as our lodestar" by "ensur[ing] that we fully account for the various

public and private interests at stake," *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d

661, 666 (D.C. Cir. 2017), in evaluating motions to seal or to unseal and provide public access to

judicial records, whether filed in criminal, criminal investigative, or civil matters.

The *Hubbard* test considers:

(1) the need for public access to the documents at issue; (2) the extent of previous
public access to the documents; (3) the fact that someone has objected to disclosure,
and the identity of that person; (4) the strength of any property and privacy interests
asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the
purposes for which the documents were introduced during the judicial proceedings.

8

*Leopold*, 964 F.3d at 1131 (ordering unsealing in criminal investigative matters) (quoting *Metlife*, 865 F.3d at 665); *see also id.* at 1129–30 (explaining that unless "Congress has spoken directly to the issue at hand," the "common-law standard enshrined in the *Hubbard* balancing test" governs "[]sealing decisions" (internal quotation marks omitted) (quoting *Metlife*, 865 F.3d at 669)); *Hubbard*, 650 F.2d at 317–22.

### B. First Amendment Right of Access

The First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents. *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 603–04 (1982). Bolstered by the Sixth Amendment's express right for a "public trial" in "all criminal prosecutions," U.S. CONST. amend. VI, public access to criminal trials forms the core of this First Amendment constitutional right, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (explaining that "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted"). A similar right of access has been found to arise wherever "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers*, 448 U.S. at 573). Under this so-called "'experience and logic' test," *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003), "both these questions must be answered affirmatively before a constitutional requirement of access" attaches, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985). Applying this standard, the Supreme Court has recognized a First Amendment right of access to criminal trials, *voir dire* proceedings, and preliminary hearings, while the D.C. Circuit has extended such a right to completed—but not uncompleted—plea agreements. *See Brice*, 649 F.3d at 795–96 (citing authorities).

9

Even where the First Amendment provides a right of public access, however, this right is "'qualified' and is not absolute." *In re Application of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) ("*In re New York Times*"); *see also Brice*, 649 F.3d at 795. In particular, the presumption of public access may be overridden upon a showing that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Brice*, 649 F.3d at 796 (quoting *Wash. Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)).

## III.   DISCUSSION

This Court was directed to reconsider, on remand, "whether sealing is still justified in view of the *Hubbard* factors or whether redaction would be an appropriate alternative." *In re L.A. Times Commc'ns LLC*, 28 F.4th at 297. Notwithstanding "that this matter is now in a different posture"—given both DOJ's recent acknowledgement on remand of the existence of the search warrant materials for the first time in the course of litigation before either this Court or the D.C. Circuit, *see* Gov't's May 24, 2022 Resp. at 1, and the public disclosures made by the SEC in other pending litigation that arose after this Court's initial decision—consistent with the Circuit's mandate, the Court concludes that limited unsealing of the search warrant materials, albeit more limited than DOJ proposes, remains "an appropriate alternative" to full unsealing here, *In re L.A. Times Commc'ns LLC*, 28 F.4th at 297.

In its latest filing, DOJ proposed two categories of redactions: (1) those aimed at protecting third-party privacy interests, including, among other things, the "private financial information" of third parties, Gov't's Mot. at 2; "information gained from the cooperation of private third-party witnesses," *id.*; and the descriptions of DOJ's "law enforcement techniques and processes in the course of the investigation," *id.*; Gov't's Add'l Supplement in Resp. to

Order of the Ct. at 1; and (2) those meant to preserve the due process interests of investigative targets "against whom the probable cause allegations in the warrant were made" but were not charged with any criminal offenses.  *Id.*  The continued sealing of the former category of information ("Category 1") is appropriate under the *Hubbard* factors and the First Amendment.

As to the latter category ("Category 2"), the due process concerns for targets of criminal investigations are serious, particularly in a closed investigation resulting in no formal criminal charges, and certainly persist here.  Nevertheless, for reasons further explained below, both the privacy and due process interests of the targets named in the search warrant materials fall by the wayside in the context of this case where those targets publicly acknowledged DOJ's investigation into their conduct by reporting in public fora that the investigation into their own conduct was closed.  Such public disclosure, compounded by the fact that "the investigation involved actions taken by a public official in his public capacity," *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298, sufficiently diminishes any privacy or due process interests for the strong presumption in favor of public access to prevail, requiring disclosure of Category 2 information.

A.     **Common Law Analysis**

The first *Hubbard* factor—the need for public access to the materials at issue—weighs against additional unsealing of Category 1 information, but not so for Category 2 information.[3] To start, in directing reconsideration of the need for public access to the search warrant materials, the D.C. Circuit identified a "powerful public interest in learning of a sitting Senator's potential violation of insider-trading laws based on information acquired in his official capacity." *L.A. Times Commc'ns LLC*, 28 F.4th at 298.  Releasing information about the identities of third parties and details about law enforcement's investigative techniques does not aid that "powerful

---

[3]     The search warrant materials at issue are indisputably judicial records, as *Hubbard* first requires courts to consider.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 296–97; Pet'r's Opp'n at 14–15; Gov't's Mot. at 6, 11 (acknowledging *Hubbard*'s first inquiry regarding a "judicial record" status then considering the *Hubbard* factors as applied to judicial records in this case).

public interest."  DOJ's proposed limited unsealing of the search warrant materials provides documentary confirmation and additional context regarding the criminal investigation into Senator Burr for possible violations of the STOCK Act, including what steps were undertaken by law enforcement to conduct an investigation, providing ample transparency in this particular investigation.  *See* Revised Redacted Search Warrant Materials.

To the extent petitioner seeks additional access to the search warrant materials "to gain insight into the [Justice] Department's internal decision-making processes" or "ultimate charging decisions," further unsealing of the search warrant materials would, in DOJ's view, *see* Gov't's Mot. at 11, prove unhelpful, and the Court agrees.  The internal decision-making that led to the decision not to pursue formal criminal charges occurred *after* issuance of the search warrant, which plainly issued when the investigation was ongoing.  The search warrant materials simply do not reflect whatever countervailing information subsequently informed the prosecutorial decision to close the investigation without charges.  Instead, as the government points out, the search warrant materials—particularly the affidavit in support of the warrant—amount to "only a snapshot in time of the Department's understanding of the conduct at issue in the investigation." Gov't's Mot. at 10.  Indeed, the fact that the search warrant materials reflect merely a "snapshot in time" was among the significant concerns expressed initially by this Court in denying the disclosure in this closed investigation that resulted in no criminal charges due to the need to avoid unfairly tarring the targets with charges of criminal wrongdoing based merely on probable cause, without their having the opportunity presented by the procedural mechanism of a public trial to dispute and vindicate their conduct.  *See In re L.A. Times Commc'ns LLC*, 2021 WL 2143551, at *4.  In any event, further disclosure of the search warrant materials would "not inform the public whether the government's understanding of the facts later changed" and how

that changed understanding affected the investigation and eventual charging decisions.  Gov't's Reply at 3.

On the other hand, the "powerful public interest in learning of a sitting Senator's potential violation of insider-trading laws based on information acquired in his official capacity," *In re L.A. Times Commc'ns. LLC*, 28 F.4th at 298, cannot be gainsaid.  As petitioner correctly posits, additional unsealing would "shin[e] a light on the Government's investigation of political corruption," Pet'r's Opp'n at 1 (internal citations omitted), to understand "whether the separation-of-powers concerns raised by a search targeting a member of a coordinate branch were given appropriate weight," *id.*, and to provide the public an opportunity "to evaluate the basis upon which the search was authorized in the first place," *id.* at 3.  *See also id.* at 4 (asserting additional unsealing is needed so "the public [can] understand how weak or strong the Government's original basis for investigating Senator Burr was, which in turn would inform the public's understanding of whether the government had the evidence but nevertheless pulled its punches" (internal citations omitted)).  Petitioner is right as those arguments pertain to Category 2 information, which the SEC filings, media reporting, and public statements have already disclosed, even though this closed investigation resulted in no criminal charges.

In sum, as to the first *Hubbard* factor, the public interest weighs heavily to support further unsealing of Category 2 information about targets subject to investigation for misuse of a public office, *see In re L.A. Times Commc'ns LLC*, 28 F.4th at 298, certainly to the extent such information already has been disclosed in other fora or otherwise confirmed, including, as here, by the targets themselves in public statements that DOJ had closed an investigation into their conduct, *id.* at 295–96 (citing public statements by former Senator Burr and Gerald Fauth's counsel).

The second *Hubbard* factor requires examination of the extent of previous public access to the search warrant materials.  The Category 1 information, which remains redacted in the search warrant materials, has not been previously public.  DOJ's proposed redactions of Category 2 information are insufficiently reflective of the information already available in the public domain through media coverage, Senator Burr and Fauth's own public statements, and disclosures in the SEC proceedings, including information that DOJ conducted an investigation into Senator Burr and Gerald Fauth; that a warrant issued to search Senator Burr's phone; and that the investigation into both Burr and Fauth concluded without charges.  *See* Gov't's Mot. at 12.  This factor therefore calls for additional disclosure of Category 2 information.

The third, fourth, and fifth *Hubbard* factors—which as aptly put by petitioner "ask variations o[f] the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from unsealing," Pet'r's Opp'n at 8—cut both ways: favoring continued sealing of Category 1 but not Category 2 information.

Disclosure of warrant materials may implicate the privacy interests of third parties, whether they are witnesses, informants, or other suspects.  *Application of WP*, 201 F. Supp. 3d at 123; *see also Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984).  Governmental interests can likewise be implicated by unsealing of closed investigation materials, as the government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  *Application of WP*, 201 F. Supp. 3d at 127 (citing *Smith v. Lanier*, 726 F.3d 166, 167 (D.C. Cir. 2013)).  Preservation of witness anonymity "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."  *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424–25 (1983) (explaining policy

14

reasons undergirding grand jury secrecy that "many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements," (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979))).  Each of these compelling interests is implicated here and ground DOJ's "object[ion] to further disclosure of the Materials," at least in Category 1.  Gov't Mot. at 12.

As DOJ persuasively explains, additional unsealing of the search warrant materials that would reveal "extensive details of interviews with private third-party witnesses whose role in the investigation is not publicly known" may compromise not only those third-party witnesses' reputations and livelihoods but also the government's own "law enforcement interest in maintaining its ability to secure cooperation from witnesses in the future."  Gov't Mot. at 10. Further disclosure may also compromise the confidentiality of the government's investigative techniques and "cause the subjects of other investigations to change their conduct to evade detection and otherwise thwart future investigations of similar allegations."  *Id.*; *see also* Gov't's Reply at 4 (noting continued sealing is necessary to prevent the "chilling effect that disclosure would have on the scope and quality of evidence that government investigators are willing to include in search warrant applications").  These privacy and law enforcement interests central to the Category 1 redactions accordingly counsel against additional disclosure of such information, which as noted has not been previously disclosed.  The proposed redactions detail identifying information about third parties and their contributions to the investigation and related law enforcement techniques and processes, the release of which poses significant risk of triggering the harms highlighted by DOJ.

Category 2 information pertaining to Senator Burr and Fauth are a different story.  DOJ notes that "[b]ecause the [Justice] Department's investigation concluded without an indictment, Senator Burr holds acute individual interests against disclosure analogous to those in the grand jury context," including "the stigma that would affect [his] reputation; privacy interests regarding the details of his financial transactions that are included in the warrant; and his inability to refute the Department's early—and ultimately unavailing—allegations because the investigation never progressed to a courtroom."  Gov't's Mot. at 9.  Petitioner counters that these "claimed privacy and law enforcement interests are not compelling in light . . . of information that is already public" about the Justice Department's investigation into Senator Burr.  Pet'r's Opp'n at 17.

Full disclosure of the search warrant materials prepared at an earlier stage of the government's now-closed investigation into Senator Burr and other targets, "without providing a proper forum for vindication," straddle a fine line with the limits of the Due Process Clause of the Fifth Amendment.  *Application of WP*, 201 F. Supp. 3d at 123; *id.* at 122 (when "a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations"); *accord United States v. John Doe, Inc. I*, 481 U.S. 102, 109 n.5 (1987) (describing that grand jury secrecy is meant to, *inter alia*, "protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt" (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, n.6 (1958))); *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) ("[Grand jury] secrecy safeguards vital interests in . . . preserving the rights of a suspect who might later be exonerated" (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. at 219)).  As this Court has previously explained, once an investigation closes without charges, the subject of the criminal investigation retains significant privacy interests tied to the public disclosure of

investigation materials, such as avoiding "the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing,' particularly where individuals lack the opportunity 'to clear their names at trial," *Application of WP*, 201 F. Supp. 3d at 124 (internal quotations and citation omitted); *accord Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 566 n.11 (1993) ("[G]rand jury secrecy has traditionally been invoked to justify the limited procedural safeguards available to witnesses and persons under investigation."); *United States v. Johnson*, 319 U.S. 503, 513 (1943) (underscoring "the indispensable secrecy of grand jury proceedings—as important for the protection of the innocent as for the pursuit of the guilty"), as well as "'a second, distinct privacy interest in the contents of the investigative files,'" *Application of WP*, 201 F. Supp. 3d at 123 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091–92 (D.C. Cir. 2014)).  The D.C. Circuit contemplated that delicate balance, noting that Senator Burr's position as an elected official and his decision to acknowledge the existence of the government's investigation *may* "attenuate[]" his privacy interests implicated by public release of the search warrant materials.  *L.A. Times Commc'ns LLC*, 28 F.4th at 298; *see also* Pet'r's Opp'n at 9.

Attenuation of privacy rights that public figures experience does not equate with extinguishment of those rights.  *See L.A. Times Commc'ns LLC*, 28 F.4th at 298.  Unsealing all information regarding targets of DOJ investigations, regardless of the targets' statuses as public figures, upsets the due process protections provided by the procedural guardrails that apply to criminal matters.  *See, e.g.*, U.S. CONST. amend. V.  The *Hubbard* balancing test is the "lodestar" in this Circuit to fully account for public and private interests, *Metlife*, 865 F.3d at 666, but those interests must yield to concerns that individuals suspected of criminal wrongdoing, but uncharged for such actions, lack due process to challenge uncorroborated or premature allegations levied by a force so powerful and influential as the U.S. Department of Justice.  This

17

concern that the government in its prosecutorial posture may serve as the last word—and potentially, the worst word—on a person's conduct is one of the underlying policy reasons for Federal Rule of Criminal Procedure 6(e), which codifies the strict secrecy applicable to proceedings of a grand jury tasked with making probable cause determinations for felony criminal charges.  *See Leopold*, 964 F.3d at 1130; *John Doe, Inc. I*, 481 U.S. at 109 n.5; *McKeever v. Barr*, 920 F.3d at 844; *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499, 503–04 (D.C. Cir. 1998); FED. R. CRIM. P. 6(e).  That protection was valued by the Framers, *see In re Motions of Dow Jones & Co.*, 142 F.3d at 499, and remains of paramount importance today.

Facts and context matter, however, and here support disclosure of the Category 2 redactions.  *See United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) ("As we have observed, 'what is reasonable depends on the context.'" (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985))).  Even the secrecy attendant to grand jury material under Federal Rule of Criminal Procedure 6(e) dissipates to the extent information is "sufficiently widely known."  *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("[W]hen once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material.'" (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994))).  *See also In re Motions of Dow Jones & Co.*, 142 F.3d at 505 (holding that individual's "identity as a person subpoenaed to appear before the grand jury" is not protected under Rule 6(e), "not because of press reports relying on unnamed sources, but because [the individual]'s attorney decided to reveal this fact to the public.").  As the D.C. Circuit highlighted in this case, the significant public disclosure and acknowledgement of key facts concerning this now-closed investigation—namely those made by the targets of the investigation themselves (*i.e.,* former Senator Burr and Gerald Fauth)—diminishes both the privacy and due process interests of those targets.  As such,

*Hubbard*'s third, fourth, and fifth factors weigh against DOJ's request for continued sealing of Category 2 information.

Finally, regarding the sixth and last *Hubbard* factor—the purpose for which the documents were introduced during judicial proceedings—the Circuit observed that "[a]lthough the relevance of this factor may vary from case to case, it will 'oftentimes carry great weight' when 'a sealed document is considered as part of judicial decisionmaking.'" *L.A. Times Commc'ns LLC*, 28 F.4th at 298 (quoting *CNN Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021)). Here, the search warrant materials were "central to [the] court's probable cause determination," *Application of WP*, 201 F. Supp. 3d at 129 (citations omitted), and consequently weigh heavily in favor of disclosure except to the extent that countervailing and compelling interests dictate otherwise. In this analysis, the Court concludes that the compelling privacy and law enforcement interests at stake for third parties and law enforcement techniques and processes favors continued sealing of the Category 1 redactions but the unsealing of Category 2 information due to already available and "sufficiently widely known" public disclosures.

The government's *Ex Parte* Response in Opposition to Petitioner's Motion to Unseal Court Records, ECF No. 12, however, remains fully under seal despite forming "part of" this Court's "judicial decision-making" process to resolve petitioner's initial motion to unseal the then-hypothetical search warrant materials. *L.A. Times Commc'ns LLC*, 28 F.4th at 298. Now that the existence of the search warrant materials is no longer disputed, DOJ will be directed to submit on the public docket a public version of this opposition brief, with any redactions tracking those now approved for the search warrant materials.

In a full accounting of the *Hubbard* factors, Category 1 information concerning the interests of third parties and law enforcement investigative techniques and processes in the search warrant materials that the government proposes to maintain under seal, may continue to

be sealed.  The Category 2 information relevant to the government's investigation into Senator

Burr and Gerald Fauth's conduct that DOJ seeks to shield under the Due Process Clause shall be

disclosed as instructed in the Order.

> **B.      First Amendment Analysis**

The D.C. Circuit has had no occasion to decide whether there is a First Amendment right

of public access to search warrant materials in matters that did not culminate in criminal charges.

*See, e.g.*, *L.A. Times Commc'ns LLC*, 28 F.4th at 297 (only considering petitioner's claim to the

search warrant materials under common law and "not . . . reach[ing] the L.A. Times' arguments

under the First Amendment"); *In re New York Times*, 585 F. Supp. 2d at 88 ("This Circuit has

not entertained the question . . . whether or not there is a First Amendment qualified right of

access to warrant materials after an investigation has concluded.").  Even assuming that a

qualified right of access under the First Amendment applies to search warrants issued in a closed

investigation, the compelling privacy and law enforcement interests discussed *supra* plainly

offset any presumption of public access to Category 1 information beyond the limited unsealing

proposed by the government here.  Accordingly, as the common-law analysis explains, Category

2 information may be disclosed in the specific factual context of this matter given prior public

disclosure of this information.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, DOJ's proposed redactions in its latest proposed redacted

version of the search warrant and supporting affidavit, ECF No. 34-1, are appropriate to protect

third-party privacy interests—including private financial information of third parties;

information gained from the cooperation of private third-party witnesses; and descriptions of the

government's law enforcement techniques and processes in the course of the investigation—and

thus will be retained.  DOJ's proposed redactions intended to preserve the due process interests

of investigative targets against whom the probable cause allegations in the warrant were made without any criminal charges being brought must be disclosed.  Accordingly, it is hereby

**ORDERED** that DOJ's Motion for Continued Sealing, ECF No. 25, is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that DOJ shall, by September 5, 2022, file on the public docket a redacted version of the Revised Redacted Search Warrant Materials, ECF No. 34-1, with the following additional disclosures in the Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize: (1) in **Paragraph 4**, disclose all proposed redactions; (2) in **Paragraph 59**, disclose the first 3 lines of the paragraph, i.e., words 12–43 in the first sentence; (3) in **Paragraph 61**, disclose the entire first, third, and fifth sentences, the first 9 words and the last 15 words in the second sentence, and the first 9 words and the last 12 words in the fourth sentence; it is further

**ORDERED** that Los Angeles Times Communications LLC's Motion to Take Judicial Notice, ECF No. 27, is **GRANTED**; and it is further

**ORDERED** that DOJ file on the public docket a public version of its Sealed Opposition, ECF No. 12, by September 5, 2022, with redactions consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

*This is a final and appealable Order.*

Date:  August 29, 2022

_____
BERYL A. HOWELL
Chief Judge

21