# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS | Misc. Action No. 1:21-mc-16<br><br>**FILED *EX PARTE* AND UNDER SEAL** |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO UNSEAL COURT RECORDS

In May 2020, Applicant, the Los Angeles Times, received an unauthorized disclosure of information from an anonymous "law enforcement official" regarding a search warrant the government had reportedly obtained for U.S. Senator Richard M. Burr's cellular telephone, and published an article based on it. Applicant now seeks to exploit that improper leak to force the unsealing of records related to the warrant. The government has never publicly acknowledged its investigation of Senator Burr—which the government concluded without any criminal charges—nor has the government disclosed any of the facts discussed in the search warrant affidavit, which comprises information ▮▮▮▮▮ provided by third-party witnesses ▮▮▮▮▮. Disclosure of the search warrant materials would (1) undermine the compelling law enforcement interest of maintaining the secrecy of ▮▮▮▮▮ investigative steps—including securing the cooperation of potential witnesses—and (2) eviscerate recognized privacy, reputational, and due process interests of several uncharged individuals, including Senator Burr. Applicant's motion to unseal should be denied.

I.  **FACTUAL BACKGROUND**

    A.  **The Government's Investigation Involving Senator Burr**

The Department of Justice's Public Integrity Section, United States Attorney's Office for the District of Columbia, and Federal Bureau of Investigation opened a criminal investigation into Senator Burr's investment activity in March 2020. Specifically, the government sought to determine whether Senator Burr sold or purchased stock based on non-public information relating to the COVID-19 pandemic that he received as a U.S. Senator, in violation of the Stop Trading on Congressional Knowledge Act. *See* 15 U.S.C. §§ 78j(b), 78u-1(g). ███████████ ███████████████████████████████████████████████████, and the government's investigation ███████████████████████ toll records, investment account records, and communications, as well as interviews ███████████████████████████████████████. The government's investigation also focused on trading activity by Senator Burr's brother-in-law, Gerald W. Fauth III, who sold a significant amount of stock on the same date that Senator Burr sold almost all of his and his wife's stock. In January 2021, following a thorough review of the evidence ███████████████████████████████████, the government formally closed the investigation without seeking an indictment ███████████.

The government has consulted counsel for Senator Burr regarding Appellant's motion, and Senator Burr opposes unsealing of the warrant materials.

    B.  **The Rule 41 Search Warrant for Senator Burr's Phone and the Unauthorized Disclosure to the Applicant**

In the course of its investigation of Senator Burr, on May 13, 2020, the government applied for and received from Chief Judge Beryl A. Howell a Rule 41 warrant for the search for and seizure of certain data on Senator Burr's mobile phone. *See* 20-sw-00132 (BAH) *SEALED*, ECF No. 3 (Exhibit 1). The Affidavit filed in support of the government's application contains detailed,

sensitive information, including the following:

1. Information about the swearing government agent: ¶ 2.
2. Personally Identifiable Information ("PII") of Senator Burr: ¶¶ 5, 8, 63.
3. PII of Senator Burr's spouse: ¶ 9.
4. PII of Senator Burr's brother-in-law: ¶ 10.
5. PII of Senator Burr's co-sister-in-law: ¶ 11.
6. ███████████████████████████████████
7. ███████████████████████████████████
8. Toll records ███████████████████████
9. Discussion of trading activity conducted by Senator Burr: ¶¶ 31, 36, 41.
10. Communications between Senator Burr ████████████████
11. Investment account records ████████████
12. Communications between Senator Burr ████████████████
13. Familial communications among Senator Burr, his wife, Senator Burr's brother-in-law, Gerald Fauth, and Fauth's wife: ¶¶ 45, 46, 50.
14. Discussion of trading activity conducted by Fauth ████████

The affidavit assembles the above sensitive information into a narrative that explains that there was probable cause to believe that there was evidence on Senator Burr's phone of federal crimes committed by Senator Burr and Fauth. Although a search warrant is not a formal allegation of a crime, the affidavit's narrative—if unsealed—would essentially levy such allegations against Senator Burr and Fauth.

Because the affidavit and other materials contained sensitive information, the government also sought and received from Chief Judge Howell an order sealing the application, affidavit, and other related materials. *See* 1:20-sw-00132 (BAH) *SEALED*, ECF No. 4.

FBI agents executed the warrant on the evening of May 13, 2020. Later that same evening, Applicant published an article reporting on the warrant, citing as its source "a law enforcement official" who had spoken "on condition of anonymity to discuss a law enforcement action."[1] The same article stated that "Kerri Kupec, a Justice Department spokeswoman, declined to comment."

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### C. Applicant's Motion to Unseal Court Records

On February 24, 2021, Applicant filed an application seeking disclosure of sealed court records relating to the government's investigation. Specifically, Applicant sought "an order unsealing the search warrant application, any supporting affidavits, the search warrant itself, the return, the docket sheet, and any other judicial records connected to the search warrant served on Senator Burr . . . on or about May 13, 2020." ECF No. 1 at ¶ 2. The application cited numerous media reports, including publications in the Applicant's news outlet, The Los Angeles Times (hereinafter, "L.A. Times"), as evidence that the Justice Department had (1) conducted a criminal

---

[1] Del Quentin Wilber and Jennifer Haberkorn, *FBI Serves Warrant on Senator in Investigation of Stock Sales Linked to Coronavirus*, L.A. Times (May 13, 2020), available online at https://www.latimes.com/politics/story/2020-05-13/fbi-serves-warrant-on-senator-stock-investigation.

investigation into Senator Burr's trading activity in the wake of the COVID-19 pandemic, (2) executed a search warrant on Senator Burr's mobile phone in connection with this investigation, and (3) concluded the investigation without bringing any charges. ECF No. 1 at ¶¶ 11, 12, and 14, respectively. To date, the Justice Department has not addressed any of the media reporting, consistent with the Justice Department's policy and protocols to neither confirm nor deny the existence—or non-existence—of criminal investigations. *See* JUSTICE MANUAL § 1-7.400 and 1-7.410; *see also Id.* at § 9–27.760 (noting that there is ordinarily no legitimate governmental interest in the public allegation of wrongdoing by an uncharged party).

Having broken the story with an anonymous source, Applicant now urges this Court to unseal court records regarding the seizure of Senator Burr's mobile phone; and it does so by alleging, in part, that any countervailing law enforcement or privacy interests in maintaining closure have dissipated precisely because of the public reporting that Applicant did based on the reported anonymous, unauthorized disclosure of information. ECF No. 1.1 at page 8. As noted below in section III.A, unauthorized disclosures by law enforcement agents do not extinguish the privacy, reputational, and due process interests of uncharged third parties, and the harm already done to these interests by the unauthorized disclosure to Applicant would be exacerbated if Applicant's request were granted and the search warrant materials unsealed.

## II. APPLICABLE LEGAL PRINCIPLES

Courts have long recognized a qualified right of access to search warrant materials under both the First Amendment and common law. *See e.g.*, *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83, 87 (D.D.C. 2008). But Applicant cites no authority in support of the unsealing of search warrant materials in an uncharged, covert investigation in which—as in the instant matter—the government and the subject of the search

warrant uniformly oppose access.

### A. First Amendment Right of Access

Courts apply a two-step inquiry when determining right of access under the First Amendment. *See In re Leopold*, 300 F. Supp. 3d 61, 67 (D.D.C. 2018) (citing *Press—Enter. Co. v. Superior Court of Cal. For Riverside Cty.*, 478 U.S. 1, 8-9 (1986)), *rev'd on other grounds*, 964 F.3d 1121, 1131 (D.C. Cir. 2020). First, courts must determine whether "experience and logic" dictate that a qualified right of access attaches to the proceeding or document in question. *Id.*; *see also In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83, 87 (D.D.C. 2008). Under this step of the inquiry, courts must determine whether "the place and process have historically been open to the press and general public" (*i.e.*, experience) and "whether public access plays a significant positive role in the functioning of the particular process in question" (*i.e.*, logic). *Id.* (citing *Press—Enter. Co.*, 478 U.S. at 8-9); *see also In re Leopold*, 300 F. Supp. at 80-81 ("The public possesses a qualified First Amendment right of access to judicial proceedings where (i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding" (internal citations omitted)).

The second step of the inquiry calls for a balancing test to determine whether any overriding interests outweigh a finding of presumptive right of access under the first step of the inquiry. Specifically, courts must determine "whether 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest' nonetheless trumps any qualified right of access that attaches." *In re Leopold*, 300 F. Supp. at 81 (quoting *Press—Enter. Co.*, 478 U.S. at 9). The government can overcome the presumption of access by showing that "(1) closure serves a compelling interest; (2) there is a substantial

probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 118 (D.D.C. 2016) (quoting *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011)).

### B.    Common Law Right of Access

In addition to the First Amendment right, courts have recognized a "broader, but weaker, common law right" of access to public records, including certain "judicial records." *In re WP Co. LLC*, 201 F. Supp. 3d 109, 118 (D.D.C. 2016) (citing *United States v. El-Sayegh*, 131 F.3d 158, 160-61 (D.C. Cir. 1997)); *see also In re Leopold*, 300 F. Supp. at 81 ("The common law also provides a right of access 'to inspect and copy public records and documents, including judicial records and documents.'" (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978))).

Like the First Amendment test, courts apply a two-step inquiry when determining right of access under common law.  First, courts must decide whether the document sought is a "public record."  Second, if the record in question is a "public record," courts must conduct a balancing test of the government's interests in keeping the record secret against the public's interest in disclosure.  *See In re Leopold*, 300 F. Supp. at 81.

The D.C. Circuit has articulated a six-factor test for purposes of conducting the balancing of competing interests under the common law right of access.  *See MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666  (D.C. Cir. 2017) ("[T]he *Hubbard* test has consistently served as our lodestar because it ensures that we fully account for the various public and private interests at stake.") (collecting citations)).  Specifically, the *Hubbard* test requires consideration of the following factors:

    1.    The need for public access to the documents at issue;

    2.    The extent of previous public access to the documents;

    3.    The fact that someone has objected to disclosure, and the identity of that person;

    4.    The strength of any property and privacy interests asserted;

    5.    The possibility of prejudice to those opposing disclosure; and

    6.    The purposes for which the documents were introduced during the judicial proceedings.

*Leopold v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (citing *MetLife*, 865 F.3d at 665). Federal Rule of Criminal Procedure 6(e), however, which pertains to grand jury records, "expressly directs secrecy as the default position" as long as necessary to prevent unauthorized disclosure of matters occurring before the grand jury, "and thus displaces the common-law right of access." *Id*. at 1130 (citing *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998)).

**III.**    **ARGUMENT**

    The government has a compelling interest in preserving the confidentiality of investigative techniques and grand jury materials in uncharged investigations. The only reason the public is aware of the government's search warrant on Senator Burr is because of the unauthorized disclosure of information that was amplified by Applicant's news outlet. The government has never publicly acknowledged the existence of this investigation, much less the execution of the search warrant on Senator Burr or the contents of the search warrant application. Nor has the government charged or convicted anyone in connection with this investigation, like other cases in which courts have granted access to search warrant materials. In light of the foregoing facts and procedural posture, established case law in the District of Columbia and elsewhere strongly counsels against disclosure under the First Amendment and common law.

A. **The Qualified First Amendment Right of Access Does Not Apply and Is Outweighed by Compelling Privacy, Reputational, Due Process, and Law Enforcement Interests**

Applicant's claim of right of access fails the "experience and logic" test under the First Amendment. In its filing with the Court, Applicants declare that "[a]pplying [the experience and logic] framework, this Court has held that the First Amendment presumption of public access applies to search warrant materials after an investigation has concluded" and cite two highly distinguishable district court opinions in support of the statement. ECF No. 1.1 at 6. That is the full extent of Applicant's argument on the first step of the First Amendment inquiry: A broad brush declaration of applicability followed by two inapt rulings.

Applicant's entire argument regarding the qualified First Amendment right rests on two inapposite cases—one involving warrant materials in a case that had been indicted and tried in open court, and another involving warrant materials pertaining to an individual who had been publicly and falsely accused of a crime, exonerated, and who had as a result filed a lawsuit that brought details of the case into the public sphere. Applicant offers no authority in support of its argument that the qualified First Amendment right of public access outweighs the government's compelling interest in grand jury material or the testimony of witnesses in an unindicted matter, or Senator Burr's due process and privacy interests—because no such authority exists. Applicant's First Amendment claim should be denied.

The first inapposite case that Applicant cites in support of its First Amendment claim is Chief Judge Howell's opinion in *In re WP Co. LLC*, 2016 U.S. Dist. LEXIS 55924, 2016 WL 1604976 (D.D.C. 2016). That case involved the Washington Post's request to access search warrant materials in the D.C. United States Attorney's Office investigation into campaign finance activities for the 2010 D.C. mayoral election—an investigation that was publicly acknowledged by the government and successfully prosecuted. Accordingly, the Court determined in that case

that unsealing of certain sealed court materials—with redactions—was appropriate. *Id*. at *3.

Applicant then cites, but omits discussion of, Chief Judge Howell's subsequent ruling in the same case denying the Washington Post's request for access to warrant materials in a related, closed investigation that did not result in charges—like the instant matter—because of compelling individual and law enforcement interests. In that apposite decision, Chief Judge Howell noted that "contrary to the [plaintiff]'s broad conception of its right to review post-investigation warrant materials in this case, courts have been reluctant to recognize even a qualified public right to access to such materials" and further observed "three distinct, yet overlapping individual interests" in such a scenario:

> First, the mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest. Second, the substance of the allegations of criminal conduct may reveal details about otherwise private activities that significantly implicate an individual's privacy interests…Finally, where, as here, a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations.

*Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016). Indeed, Chief Judge Howell went on to analogize the individual interests in such a case—a case like the instant one, in which an investigation was not publicized by the government or the subject, and that did not result in public charges—to a grand jury proceeding, stating, "without an indictment, even a "closed" investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment." *Id*. at 125. Likewise, the Court determined that law enforcement's interest "in preserving its ability to work with witnesses to obtain information regarding suspected crimes" and to do so secretly was compelling. *Id*. at 127. Finally, the Court determined that unsealing the documents in redacted form would be insufficient because the public would be able to determine

the identities of individuals whose names were redacted, and because redactions would simply invite conjecture and speculation.

The second case cited by Applicant is *In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008), in which then Chief Judge Royce C. Lamberth granted access to search warrant materials involving Dr. Steven Hatfill, an exonerated suspect in the government's criminal investigation of the mailing of anthrax to members of Congress and the media. Like here, the subject of the search in *In re New York Times* was never charged. Unlike here, however, the fact that Hatfill had been a suspect but was cleared was a matter of public record, and Hatfill had filed a lawsuit against the government and "had placed some details regarding the searches in the public eye." *Id*. at 91. Indeed, as Chief Judge Howell would later note in the *In re WP* matter:

> As previously discussed, however, . . . the present case is readily distinguishable from *In re New York Times* in that none of the investigative information giving rise to the sealed materials at issue here has been publicly acknowledged by the USAO. Apparently conceding this important distinction, the Post relies on informal "conversations with . . . confidential and on-the-record sources" to suggest that the information it has reported is now widely acknowledged.

*In re WP Co. LLC*, 201 F. Supp.3d at 130.

Moreover, Chief Judge Howell emphasized that unauthorized disclosures of information do not negate legitimate privacy interests:

> Setting aside the troubling suggestion that unauthorized disclosures from law enforcement agents or the USAO have the effect of extinguishing the privacy, reputational, and due process interests of uncharged third parties, the fact remains that the documents the Post seeks are not publicly available and the Post's reporting to date offers scant information regarding their supposed contents. For this reason, the additional disclosure the Post seeks is highly likely to significantly infringe on the compelling interests identified above.

*Id.*

In this case, compelling individual interests and the government's compelling law enforcement interests far outweigh the qualified First Amendment right of public access.

With respect to compelling individual interests, here, as in *In re WP*, because the government's investigation concluded without an indictment, Senator Burr holds acute individual interests against disclosure analogous to those in the grand jury context. These include the stigma of criminality that would forever affect Senator Burr's reputation; privacy interests regarding the details of his financial transactions that are included in the warrant; and his inability to refute the government's accusations because the investigation never progressed to a courtroom. The fundamental fairness issue of this last point cannot be overstated—if the warrant materials were unsealed, Senator Burr would stand accused by the government of serious federal offenses in the court of public opinion without any recourse to defend himself. *See United States v. Smith*, 776 F.2d 1104, 1113-14 (3d Cir. 1985) (holding that sealing of a list of unindicted co-conspirators in a bill of particulars narrowly tailored to serve compelling privacy interest because "the named individuals have not been indicted and, accordingly, will not have an opportunity to prove their innocence in a trial. This means that the clearly predictable injuries to the reputations of the named individuals is likely to be irreparable."). Indeed, to date, Senator Burr and his counsel have not seen the affidavit of the search warrant for his phone, and they have informed the government that they oppose unsealing of the warrant materials. Similarly, the warrant makes allegations about the trading activities of Senator Burr's brother-in-law, Gerald Fauth, that could subject Fauth to the stigma of criminality without the opportunity to defend himself in the public sphere.

Senator Burr's and Fauth's individual interests are not the only compelling ones present in this case. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Exposure of their cooperation could have severe, detrimental repercussions for their reputations and livelihoods. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████

The government has compelling law enforcement interests in the continued sealing of the warrant materials. As described above, ███████████████████████ ██████████ The remainder of the material relies in large part on ███████████████, and other innocent third-party witnesses; as in *In re WP*, disclosure of these individuals' cooperation would be harmful to the government's continuing ability to secure cooperation from witnesses in the future.

Finally, continued sealing of the warrant documents is narrowly tailored to protect these compelling interests. Because so much of the warrant consists of ████████████ and interviews with witnesses, limited unsealing with redactions is not appropriate in this case; instead, there would be widespread speculation about the identities of the government's witnesses and evidence in a way that would be harmful to the government, its witnesses, Senator Burr, and Fauth.

**B.    Any Common Law Right of Access is Also Outweighed by Compelling Privacy, Reputational, Due Process, and Law Enforcement Interests**

Applicant's request for disclosure fails the *Hubbard* test for the same reasons it fails under the First Amendment analysis.

Focusing on the second factor under *Hubbard* (*i.e.*, the extent of previous public access to the documents), Applicant argues that "no countervailing—let alone compelling—interests would

justify the continued sealing . . . [because the] investigation into Senator Burr's stock sales has ended, and details of that investigation and the search warrant's execution have been reported on extensively, including by Applicant, and are widely known." ECF No. 1.1 at 8.  This argument has no merit.  As described above (at 11), the unauthorized disclosure of information to Applicant does not negate the legitimate compelling interests of individuals and the government that the warrant materials remain sealed.  Furthermore, ███████████████████████████████████████████████████████████████████████████████████████—clearly establishes that there has not been public access to the documents.

Furthermore, as noted in the previous section, the government has strong law enforcement interests in maintaining the search warrant materials under seal and several uncharged parties also have significant privacy, reputational, and due process interests at stake in the instant matter.  These interests, which go directly to *Hubbard's* fourth and fifth factors (*i.e.*, the strength of any property and privacy interests asserted and the possibility of prejudice to those opposing disclosure, respectively), strongly counsel in favor of continued closure and override Applicant's stated interest in the search warrant materials.  *See In re WP Co. LLC*, 201 F. Supp. at 130 ("Beyond this significant privacy interest, the individual due process, reputational, and law enforcement concerns described above . . . further counsel against additional disclosure in this case.  Given the public's limited access to the information contained in the sought-after materials, further disclosure would tangibly harm these interests.").

Finally, as described above, much of the narrative presented in the affidavit in support of the search warrant relies upon ███████████, including historical phone records and Senator Burr's investment records.  The *Hubbard* "common-law inquiry must yield 'when Congress has

spoken directly to the issue at hand.'" *Leopold v. United States*, 964 F.3d 1121, 1130 (D.C. Cir. 2020). And with respect to grand jury records, Congress has spoken, and determined that grand jury records should remained sealed "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(6).

## IV. CONCLUSION

Applicant's publication of an unauthorized leak exposed the government's investigation and search warrant involving Senator Burr. While Applicant has broad discretion to publish under the First Amendment and the common law right of access, individual due process, reputational, and law enforcement interests dictate that sealed investigative materials in uncharged investigations remain confidential, even after the investigation has concluded. Accordingly, the government respectfully requests that the Court deny Applicant's motion.

Respectfully submitted,

| | |
|---|---|
| CHANNING D. PHILLIPS<br>ACTING UNITED STATES ATTORNEY<br>D.C. Bar Number 415793 | COREY R. AMUNDSON<br>Chief, Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice |
| /s/ *Molly Gaston*<br>Molly Gaston<br>Assistant United States Attorney<br>VA Bar Number 78506<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, D.C. 20530<br>Telephone: 202-252-7803<br>Email: Molly.Gaston@usdoj.gov | /s/ *Victor R. Salgado*<br>Victor R. Salgado<br>D.C. Bar # 975013<br>Senior Litigation Counsel<br>Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice<br>Telephone: 202-353-4580<br>Email: victor.salgado@usdoj.gov |